No. 4107

Second Circuit

(Second Division)

———

THIBEAU v. DUTTON & MERCER

———

(July 16, 1931.  Opinion and Decree.)
(August 12, 1931.  Rehearing  Refused.)

———

John G. Gibbs, of Shreveport, attorney for plaintiff, appellee.

Foster, Hall, Barrett & Smith, of Shreveport, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff, while employed by defendant, a co-partnership, as engineer or operator of a drag-line machine, used in handling dirt, on December 28, 1929, in the course of his employment, suffered injury to his right foot, as a result of the beam or boom of the machine, while in motion, jamming the foot against another part of the machine, fracturing some bones, spraining ligaments, and bruising tissue. He had been in defendant's employ for more than two years, and was being paid $35 per week for his services. He alleges total and permanent loss of use of this foot and of the right ankle as a result of said injury, and sues for 65 per cent of his weekly wages, not exceeding $20, for a period of 125 weeks, less a credit of $320 compensation he admits defendant has paid him. He also sues for medical expenses to the amount of $250. In a supplemental petition, plaintiff alleges that defendant or its insurer has paid him compensation for 16 weeks at the rate of $20 per week, and that said insurer has provided some medical treatment to him, but has refused payment of further amounts on this account, or as compensation.

Defendant filed an exception of no cause or right of action which was overruled. It is not insisted on in this court.

Defendant's answer admits employment of plaintiff as alleged and admits he suffered an injury of some kind to his right foot, but denies that such injury was of the nature and extent claimed by plaintiff; and specially denies liability for compensation beyond the amount already paid to him; that plaintiff has been paid compensation at rate of $20 per week for 23 weeks, or a total of $460, from December 28, 1929; and that its insurer had paid, or had obligated itself to pay, medical bills, expenses, etc., on behalf of plaintiff, to the amount of $250. Defendant prays that plaintiff's suit be dismissed at his cost, and his demand rejected.

The lower court found, as the evidence clearly shows, that plaintiff had been paid by defendant's insurer $440 as compensation at the rate of $20 per week, and, as the judgment is silent with respect to medical expenses, we assume it was found, as evidence also shows, that these had been discharged to the maximum of defendant's liability. The lower court fixed plaintiff's disability at 30 per cent.

The judgment of the court, in part, is here quoted:

"It is ordered, adjudged and decreed, that there be judgment herein in favor of the plaintiff, John R. Thibeau, and against the defendant, Dutton & Mercer, in the sum of Six Dollars ($6.00) per week for a period of Seventy-three and two-thirds weeks (73⅔), less Twenty-two weeks (22) which is credited by reason of an overpayment as a result of the twenty-two weekly payments made in the sum of $20.00 per week, totaling Four Hundred Forty Dollars ($440.00), leaving a balance due of Fifty-one and two-thirds weeks (51⅔) at $6.00 (Six Dollars) per week, first payment being due June 1, 1930 and weekly thereafter, with interest at the legal rate from June 1, 1930 until paid on any and all past due amounts."

What the court really awarded plaintiff was compensation at rate of $6 per week for 125 weeks, giving credit at end

of the term for 51⅔ weeks overpayment to June 1, 1930, at which time further payments were refused. Dividing $440 by $6, a product of 73⅔ is obtained, and, deducting from this number the 22 weeks for which payment is admitted, the result is 51⅔.

Defendant appealed from this judgment. Plaintiff has answered the appeal, and prays that the judgment be increased to the amount sued for.

The day plaintiff was injured, he was removed to the Schumpert Sanitarium in city of Shreveport, his foot was set and other treatment administered to him. At the expiration of about three weeks, on account of infection of the outer portion of the foot, an operation was found necessary. A horizontal incision of some inches was made between the little toe and a point below the ankle joint. The evidence does not definitely reveal the exact time required for this wound to heal, but the process was slow. On February 3d, plaintiff left the sanitarium but continued to make trips back there, with assistance of defendant, for treatment. At time of trial, December 16, the wound had entirely healed, but the foot had not regained its normal size, requiring a shoe one size larger than worn before the injury. This condition is due to callous on and about the injured bones and will eventually disappear, according to testimony of physicians. Two or three of the bones of the foot in the process of healing grew together, causing an impairment in flexibility.

The evidence does not show total disability of plaintiff, on account of the injury to his foot, beyond two months. When this case was tried, he was again in the employ of defendant, operating the dragline. It is not shown when he resumed this work. He lived 12 miles from his work and drove his own car back and forth. He testified that in the morning he felt no pain in the foot, but if he walked on it or otherwise used it for any length of time it did pain him. There is some evidence tending to show that plaintiff will go through life with his right foot "flat," a condition not existing in the left. However, we do not think the evidence justifies a conclusion to this effect. We think the evidence establishes with reasonable certainty that the abnormal conditions of plaintiff's foot, noticeable on day of trial, will pass away and that member, for all practical purposes, will again function as before the injury.

As is usually the case, the expert testimony touching the extent of plaintiff's disability, is conflicting, though not as much as often occurs. With one exception the physicians fix this disability at 20 per cent and 25 per cent. Dr. Garrett, who treated plaintiff at the sanitarium, testified that when he was discharged the disability, in his opinion, was 20 per cent.

In his brief, plaintiff calls attention to the lower court making no award to him for the period and on the basis of total disability, and then submits two propositions for our consideration:

First. That as plaintiff has sustained a "total partial disability of 50 per cent," he should be given compensation of $11.37½ per week (50 per cent of 65 per cent of weekly wages of $35) for 125 weeks.

But, second. If trial court's finding of 30 per cent disability is approved, then compensation of $6.82½ per week (30 per cent of 65 per cent of weekly wages) for a period of 125 weeks should be awarded.

This contention of plaintiff was first raised in the district court on motion to

revise judgment. In overruling the motion, the judge a quo said:

"Now, in support of the motion, plaintiff cites the case of Brown v. Vacuum Oil Co. (La. Sup.) 132 So. 117, holding:

"If the plaintiff had suffered the loss of the use of his leg entirely, he would have been entitled to 65% of his wages for 175 weeks, which would have been Twenty & 47/100 ($20.47) Dollars a week.

"As he has suffered only the loss of 30% of the use of the leg, it follows that he is only entitled to 30% per week of the amount due him if he had lost his leg for a period of 175 weeks, say Six & 14/100 ($6.14) Dollars per week."

We cannot consider the case as authority. The point in the case at issue did not seem to have been raised in the quoted case, and the court was not even considering that phase. Furthermore, the court, in the first paragraph, fell into an unintentional error in stating the employee was entitled to more than $20 for total loss of use. The court very evidently forgot, for the moment, that $20 was the maximum recovery in any case.

"What the Court stated in the second paragraph, being based on the unintentional misstatement of the law contained in the first paragraph, carries no weight, and we do not feel constrained to follow it."

We agree with the ruling of the trial judge on this question. In case of total disability, the injured employee is not entitled to compensation in excess of $20 per week, and, if there is partial disability, the maximum allowance should be reduced in proportion to the extent of the disability.

In this court, defendant submits and urges two propositions of law.

First. Can a claimant, who has been paid all the compensation due for his injury up to and beyond the time of filing suit and up to and beyond date of judgment, obtain a judgment for compensation not yet due?

Second. How should excess compensation payments be credited? By reducing the number of weekly payments, or by applying same to the weekly payments as they serially fall due?

Defendant supports the first proposition with argument, forceful and earnest, to the effect that where it is shown that the employer has paid the maximum of compensation for which he is liable, as found by the court, to or beyond the time suit is filed to have the compensation judicially fixed, the suit is premature and should be dismissed.

The Legislature of 1926, to meet the situation created by the decision of the Supreme Court in Daniels v. Shreveport Refining Corp., 151 La. page 800, 92 So. 341, and the decision of the Court of Appeal, First Circuit, in Vining v. Lock, Moore & Co., 1 La. App. 200, amended the Workmen's Compensation Law by adopting section 18, subdivision 1, par. B, of Act No. 85 of 1926, p. 120, which reads as follows:

"Unless in the verified complaint above referred to it is alleged (where the complaint is filed by the employee or his dependents) that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act, the presentation or filing of such complaint shall be premature and shall be dismissed; when such allegation is contained in such complaint and is denied by the employer at the time fixed for the hearing thereunder by the Court, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed; and the question of whether or not such allegation of nonpayment is justified under the facts shall be determined by the Court before proceeding with the hearing of the other issues involved."

Prior to this amendment, the injured employee or his dependents could invoke the court's aid and secure judgment fixing amount and term of compensation, although there was no disagreement as to amount. The amendment primarily intended to make this impossible as long as 'employer was complying with the agreement by making the weekly payments.

Defendant's position, when further analyzed, is this: That since the court has found only 30 per cent disability to plaintiff's foot and awarded compensation for a period of 125 weeks, and since payment in the aggregate of $440 had been made prior to filing of this suit, which was sufficient to discharge the court's award until May, 1931, only a moot question is presented which the court should not be called upon to decide, and which it should not decide, for, by so doing, defendant would be cast unnecessarily and unjustly for considerable cost.

The allegations of plaintiff's petition meet the contingency mentioned in the first part of the quoted 1926 amendment, and since defendant denies that it has not paid the maximum amount of its liability as employer, under the law, an issue of prematurity is tendered, under the latter part of said amendment which should be, as required thereby, disposed of before proceeding to determine other issues involved. The record does not disclose whether or not this question was urged in the lower court. We are disposed to think it was not. It is not specifically raised in the answers.

We quote the following pertinent excerpt from defendant's brief:

"In the present case, practically the entire controversy on the facts concerns the degree of impairment; and, therefore, a preliminary adjudication of that issue could not have been practicable. The matter is, therefore, now before the Court for adjudication as the original issue to be decided. It is the issue of whether or not the allegation of non-payment is justified which 'shall be determined by the Court before proceeding with the hearing of the other issues involved'."

Twenty-two weeks following plaintiff's injury expired on June first. The evidence in the record does not disclose the extent of his disability on that date, nor does it disclose the extent of disability on July 3d, when this suit was filed. He contended then that the disability was total. Defendant contended, and now contends, that all compensation due by it had been paid; that the maximum of its liability on that account had been discharged, and declined to make additional payments. That position was advanced in its answer and emphasized in argument and brief. Plaintiff still contends that his disability is 50 per cent, and that compensation should be awarded on that basis. In view of these facts and the dispute between the parties, no one could say which, if either, was right, and no means were available to determine that issue, save resort to the court. The court was powerless to decide the matter without the introduction of evidence in a trial, and, when this had been done, the position of neither side was entirely upheld. It is true that, under the court's award of compensation, defendant had overpaid plaintiff 51⅔ weeks, but it required the institution and trial of this suit to secure this definite fixing of the relative rights of the parties.

Subdivision 1 (A), sec. 18 of Act 85 of 1926, p. 120, provides:

"That in case of a dispute over or failure to agree upon a claim for compensation between employer and employee, or the dependents of the employee, either party may present a verified complaint to the Judge

of the District Court which would have jurisdiction," etc.

This complaint should contain the detail data required by the statute so that the judge may be informed thereof, and the defendant, when served, may intelligently answer and defend the action.

Subdivision 1 (B) requires that this verified complaint must allege that complainant or his dependents are not being paid, or have not been paid, and that the employer has refused to pay the maximum per centum of wages to which he, or they, are entitled under the provision of the statute. Failure to make such allegations subjects the complaint to dismissal as premature. However, if such allegations are made in the complaint and are denied by the employer, if it be shown that they are "without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed."

Can it not be truly said, in this case, that defendant has refused to pay the maximum per centum of wages to which plaintiff is entitled? If so, plaintiff's complaint is not "without reasonable cause or reasonable foundation." Defendant refused to make further payments, and refused to agree to make them, after paying $440, which, as subsequent developments revealed, was not sufficient to cover the maximum of its liability. The excess payments had no other effect than to shorten the term of the payments.

In Moss v. Levin et al., 10 La. App. 149, 119 So. 558, 120 So. 258, the court held that an injured workman, as long as he was being paid $20 per week compensation, even where there was a dispute as to the period of time over which such payments should be made, could not invoke the assistance of the court to have the period fixed. The converse of the proposition should be true. If such payments were not being made, but were refused, the right to sue arose. This case was decided after the adoption of the 1926 amendment.

"An action is not premature under a workman's compensation statute, even though defendant is willing to pay all that he thinks is due plaintiff, if in point of fact plaintiff and defendant differ as to what may be due." Ford v. Fortuna Oil Co., 151 La. 489, 91 So. 849.

We are of the opinion that the amendment of 1926, quoted hereinabove, was not intended to, and does not in reality, apply to a case wherein the facts are as disclosed in the case at bar, and that plaintiff's suit is not premature.

We further hold that, in case of disability, the term "maximum per centum of wages to which petitioner is entitled under the provisions of this act," refers to and means the maximum per centum of wages as definitely fixed by the statute in particular cases, such as, for illustration, 65 per cent of weekly wages for the loss of a foot, for a period of 125 weeks, or during period of total disability caused by injury to a foot.

"Any voluntary payments made by the employer or his insurer either in money or otherwise, to the injured employee, or his dependents, and which are accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payment to be paid as compensation; provided, that in case of disability, such deductions shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments." Subdivision 6, sec. 8, p. 114, Act No. 85 of 1926.

The Supreme Court had occasion to construe this provision of the Workmen's Compensation Law in the case of Hulo v.

City of New Iberia, 153 La. 284, 95 So. 719, and held that excess payments, voluntarily made, should be credited by shortening the period during which compensation shall be paid, and not by reducing the amount of periodical payments. This construction simply follows the plain language of the statute.

Counsel of defendant concede the correctness of the court's ruling on this point when applied to cases of disability, but seemingly argue that plaintiff does not fall in this class of beneficiaries of the law.

There are but two kinds of beneficiaries under the Workmen's Compensation Law: (1) The disabled employee; and (2) his dependents, when he is killed. With regard to the first class, excess voluntary payments of compensation must be credited by reducing the number of weekly payments; while with respect to the second class, the court has some discretion as to the disposition of such excess payments.

The ruling of the lower court on the question is right.

The judgment in this case made no award to plaintiff on the basis of temporary total disability, but fixed the compensation at an amount and for a period doubtless deemed to be fair and equitable to both sides, in view of all the facts and circumstances of the case.

"For injury producing temporary total or temporary partial disability the Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability." Act No. 242 of 1928, p. 362.

We believe the judgment appealed from does substantial justice between plaintiff and defendant, and it is, therefore, affirmed.