This is a suit wherein plaintiff seeks to recover of W. Horace Williams Company and its insurance carrier compensation under the provisions of Act 20 of 1914, as amended, at the rate of $20 per week for a period not exceeding 400 weeks, subject to a credit of $600, being thirty weeks' compensation previously paid.
Plaintiff alleges that on and for some time prior to March 8, 1941, he was employed by W. Horace Williams Company, hereinafter referred to as defendant company, in the capacity of Diesel mechanic and foreman in charge of the thirteen or fourteen wells that supplied water used in the construction of Camp Polk, and that his duties required him to keep in perfect running condition all Diesel, gasoline and electric motors used in connection therewith, including the starting, tuning up and repairing of such motors, and the keeping on hand of adequate fuel for their operation; that in the course and scope of his employment, on March 8, 1941, while helping to unload drums of fuel from a truck, his right hand was caught or jammed between a drum of gasoline and another drum of gasoline upon which it fell, resulting in a cut through the bone of the index finger of the right hand between the first and second phalanges, and a fracture or injury to the middle finger, and also a severe strain to his right arm and shoulder occurring when he extricated his hand from between the loaded drums.
He alleges further that immediately after the accident he was taken to the camp hospital where he received first aid, and from there he was transferred to the Leesville Hospital at Leesville, where the index finger of his right hand was sutured and both injured fingers were splinted; that the index finger became infected, necessitating treatments at regular intervals for several months; that his injuries incapacitated him from doing his work, but that, despite his injuries, he continued in his employment, being, however, assigned a helper and his duties changed to that of supervisor over the water wells and engines and assistant lumber superintendent.
Plaintiff further alleges that about three months after the said accident and injury, while still incapacitated, upon the suggestion of his superior, he left the employment of defendant company to accept a much lighter and less remunerative job as Chief Engineer in the Quartermaster Department of said Camp Polk, doing supervisory work, for the purpose of allowing his injuries to heal, if possible; that his index finger of his right hand continued to remain stiff and useless and remained infected, necessitating regular medical treatments, the middle finger of his said hand remained stiffened, sore and of little use, and his right arm and shoulder continued to pain him constantly and all of said conditions showed no signs of improvement during the entire time of his employment with the Quartermaster Department.
He further alleges that on July 9, 1941, at the request of an assistant superintendent of the Water and Sewerage Department of the defendant company, and while attempting to help the said assistant superintendent in servicing a locomotive with water, his injured index finger was again injured, "causing it to be pushed downward, opening the previous cut aforesaid and causing the bone of said finger to protrude; that immediately following this last occurrence or injury, his index finger was amputated at about the middle of the second phalanx; that thereafter and on September 17, 1941, a second operation was performed, at which time the said finger was amputated at the metacarpo-phalangeal joint, or about the middle of the shaft of the second metacarpal bone".
He further alleges that "ever since the performance of said second operation, as aforesaid, petitioner has suffered pains in the cicitrial (cicatricial) scar (mark) left or resulting from said second operation, that petitioner experiences considerable pain when same is touched or when placed in contact with any object, same being very sensitive, and that ever since the injuries received on or about March 8, 1941, as aforesaid, and as a direct result thereof, *Page 322 
petitioner has an apparently partial anaesthesia of the second or middle finger of said right hand, experiences pain in the use or manipulation of the muscles of his right arm, has been and is now unable to grip anything with his right hand which calls for much strength, has sustained injuries to the median nerve, suffers from the traumatic injury received to his right arm and shoulder, and a residual neuralgia of the sensory nerves of the right upper extremity", and that the said injuries render him totally and permanently disabled to do work of any reasonable character and particularly the work in and for which he was and is specially trained and skilled and for which he was employed by the defendant company.
He further alleges that he has been paid thirty weeks compensation at $20 per week, from July 9, 1941, and ending on February 3, 1942, totalling the sum of $600.
Defendants, in answer, admit the employment of plaintiff as alleged, except that they deny that his duties required him to see that an adequate supply of fuel was kept on hand with which to run the engines. They admit that the plaintiff received the injury and received the medical assistance as alleged, but deny that plaintiff was then engaged in the performance of his duties within the scope of his employment. They also deny that plaintiff's injured index finger became infected, necessitating treatments at regular intervals for several months; they further deny that the injuries received by him on March 8, 1941, in any manner incapacitated him from performing the same sort of duties as were performed by him prior thereto; they admit that plaintiff continued in the employment at the same salary, but deny that he was given a helper or a change in his duties. They admit that plaintiff left their employment and became an employee of the Quartermaster Department at the same wage or better, but deny that the finger remained infected, etc.
They deny any information as to the alleged injury of July 9, 1941, and the resulting consequences thereof. They aver that the injury occurred during his employment by the Quartermaster Department, and the disability, if any, is the result of such accident and not to any accident sustained by him while in defendant's employ.
Defendants admitted the payment of compensation at $20 per week for thirty weeks from July 9, 1941, but averred that the payment was done in error, defendants at that time being unaware of the fact that the plaintiff had sustained a further injury to his finger after having left the employ of W. Horace Williams Company and reconvened for the said amount.
On the issues thus presented, the case was tried, resulting in a judgment in plaintiff's favor awarding him compensation at the rate of $20 per week for a period not to exceed 400 weeks, subject to a credit of $600 which had previously been paid. Defendant has appealed.
In this Court, the defendants have abandoned the contention made in their answer that the accident and injury of March 8, 1941, did not arise out of and in the course of plaintiff's employment. In addition, they have abandoned all other contentions, save and except the contentions that plaintiff is not presently disabled from performing the same sort of duties as were performed by him at the time of the accident and injury of March 8, 1941, and that if disabled, his disability is not attributable to the injury he received on March 8, 1941.
At the outset, we desire to say that we find a very happy situation in this case in that there is not any contradictory testimony either by the lay witnesses, nor by the doctors. It involves only the construction to be placed on such testimony or evidence.
We have carefully reviewed the evidence as disclosed in the trial of this case, and it appears to us that the facts are substantially as follows:
Plaintiff, on February 11, 1941, was employed by the defendant company, as a Diesel mechanic and repair man and foreman in charge of all water wells, engines and motors used in the construction of Camp Polk; that prior hereto he had six years' experience with Diesel engines and twenty-seven years' experience with gasoline engines, and was skilled and specially trained and equipped in the occupation for which he was employed. His duties were to tune, repair and keep in perfect running order all the Diesel, gasoline and electric motors which were used at the thirteen or fourteen water wells that supplied water where needed in the construction of the camp, to be in charge of the pumps and the machinery of the same; to start the Diesel engines which were so used and keep them in good running condition and to see that an adequate supply of fuel was on hand with which to run the engines. All of these *Page 323 
duties required the free and ready use of both hands, arms and shoulders.
On March 8, 1941, plaintiff was injured in the manner alleged in his petition. The injury consisted of a contusion and fracture of the right index finger; this finger was badly lacerated, a portion of the flesh being stripped away from the distal phalanx, and the finger being bursted down to the juncture of the middle and approximal phalanx. The right middle finger was also injured. He was given first aid at the camp clinic and was immediately sent by the defendant company to the Leesville Hospital, under the care of Dr. W.E. Reid, where his right index finger was sutured and both injured fingers splintered.
Plaintiff continued in the employment of the defendant company, however in a different type of employment. He was employed as a supervisor of the wells, machinery, etc., and as assistant supervisor of the lumber department. He was given assistance to do the manual labor.
In June, 1941, he was advised by his superior and was recommended to seek employment with the Quartermaster Department at the camp. He was appointed by such department as Chief Engineer of the wells, a job which was supervisory in character and much lighter than his employment with defendant company. This change of jobs was to allow his injury received on March 8, 1941, to heal, if possible.
On July 9, 1941, while employed by the Quartermaster Department, at the solicitation of an assistant superintendent of the Water and Sewerage Board of defendant company for help in the opening of a valve to service with water a locomotive, and while so acting, he re-injured the said right index finger. He was immediately taken to the Camp Hospital for emergency treatment and then taken to the Leesville Hospital in charge of Dr. W.E. Reid. That evening, Dr. Reid amputated the injured index finger at about the middle of the second phalanx. He remained in the hospital for a month. During his hospitalization, his services with the Quartermaster Department were terminated. Later on, on September 17, 1941, Dr. Reid performed a second amputation of the finger by amputating the whole finger at the metacarpo-phalangeal joint.
In January, 1942, plaintiff was re-employed by the defendant company, at Belle Chasse, near New Orleans, in the capacity of night supervisor of the tractors, and assigned two white mechanics and seven negro laborers. His duty was to supervise the work of these mechanics and laborers. He was discharged by a superior for the reason that he could not do the manual labor part that his superior required of him. Again, during January, he was offered another job by defendant company, but upon showing his hand to the Field Superintendent, the Field Superintendent did not hire him.
It is abundantly proven that the injured index finger never did heal from the time of injury until its complete amputation. It immediately became infected and had to he continually treated; the hospital chart shows that it was dressed, at least every other day, from March 8 to March 31, and then every third day through April and May, and four treatments in June. However, the testimony of both Dr. Reid and the nurse in charge of the case shows positively that the treatments were more than the chart shows, and continued up to the day of hospitalization on July 9.
Dr. Reid states that he recommended the amputation of the finger from the very beginning, but that plaintiff had the desire to save his finger if possible. Dr. Reid is also positive that necessity of the final amputation was caused by the original injury of March 8, and that the injury of July 9 only had the effect of obtaining plaintiff's consent to the operation.
Plaintiff testified, and the testimony of Dr. Reid and of the nurse corroborate him, that he suffered from the very beginning; that not only his finger pained him, but that there was pain also in his shoulder. Dr. Reid X-rayed his shoulder to ascertain the cause of the pain in the shoulder, but did not find any fracture.
Dr. Reid testified that after the July 9 operation, the finger healed, but plaintiff had a very painful stump; that plaintiff continued to complain of pain in his hand, arm and shoulder, and that the operation of September 17 was done to remove, if possible, the nerve and the portion of the finger that was left, which was constantly in his way and being bumped in his work. The Doctor is emphatic that the pain that he complained of from the time of the injury on March 8, and of which he constantly complained up to the day of trial, is due to the primary injury and that the amputations performed were the results of the injury *Page 324 
of March 8. This doctor was of the opinion that the plaintiff, in his present condition, is totally disabled to do manual labor. He ascribes the condition of the plaintiff to an impinged nerve at the site of the amputation or injury to the central nervous system, sympathetic nervous system.
Dr. E.M. Shaw testified that he examined plaintiff after the amputation of the finger. He states that plaintiff complained, on palpation of the scar, of tenderness, and also complained of pain in the shoulder region on motion of the right arm. He found that the right hand and one-third of the right arm were slightly colder than the left hand and arm. He found anesthesia of the middle or second finger. He considered that plaintiff had an injury to the nerve that supplies the index finger of the right hand, and that he had a sensitive stump. He is also of the opinion that plaintiff cannot do manual labor as required of a Diesel engineer and repair man, or mechanic. He attributes plaintiff's pain to two conditions, stating that "it could be injury to the nerve to cause the painful condition, or sympathetic condition. A sympathetic condition is held out by the difference in temperature of the two hands".
Dr. E.H. Byrd examined plaintiff's right hand. He noted the loss of the right index finger and a very painful scar area. He also noted a slight difference in temperature of the right hand as compared to the left. He was of the opinion that plaintiff was suffering with post traumatic neuritis in the operating scar area. He is also of the opinion that the peripheral nerves are affected. He is likewise of the opinion that, due to his condition, plaintiff is unable to perform the duties associated with the type of work he is trained to do, that is, a Diesel engineer, a repair man, and a mechanic.
Doctor Dean H. Echols, a specialist in neurological surgery, examined plaintiff on July 8, 1942. His testimony is that "My examination showed that the hand and fingers on the affected side were colder and paler than on the normal side. There was an excellent appearing amputation stump scar, which was well healed. The scar was apparently so sensitive that the patient could not tolerate to have it touched; there was anaesthesia of the radial side of the middle finger; there was nothing wrong with the man's ability to use the wrist and elbow, but use of the shoulder seemed to be limited by pain. I made a diagnosis of chronic painful amputation stump". Relative to attributing the pain complained of by plaintiff in his shoulder to any objective symptoms, the doctor states that his diagnosis was based on two objective findings, "namely, Number 1, the finger had been amputated; and Number 2, the entire limb was colder and paler than the opposite limb". The doctor states that painless amputation stumps are not associated with pallor and coldness of the rest of the limb. In other words, "painful amputation stumps are usually accompanied by coldness and pallor of the rest of the limb". It is this doctor's opinion that plaintiff is suffering from a painful stump. He is of the opinion that the injury of March 8 causes the pain; that the sympathetic nervous system was injured. He is of the opinion that plaintiff would experience pain in his hand, arm and shoulder if he gripped anything firmly. This doctor also finds the plaintiff as being disabled to do the work of a Diesel engineer and repairman and a mechanic, in his present condition.
The defendants contend that since plaintiff returned to work as supervisor for the defendant company immediately after the injury of March 8, and thereafter accepted employment as Chief Engineer with the Quartermaster Department and again with the defendant company as night supervisor of mechanics and laborers, that he necessarily is not totally disabled to follow this occupation. The fact remains, however, that he was employed only in a supervisory manner, could not perform duties involving manual labor, was continuously in pain, and was finally discharged. The fact that he held these jobs does not necessarily mean that he can obtain other employment of the same kind. Supervisory jobs are not so easily obtained. It cannot be denied that plaintiff is unable to pursue the same kind of work which through experience, he qualified himself to do, and the character of work, his occupation, has been taken from him due to the injury.
We understand the phrase "work of any reasonable character" to mean that kind of work for which the injured employee is fitted by his status in life, his training and experience, and his education, to perform. See Ingram v. Meridian Lbr. Co., La.App., 178 So. 187, and the cases therein cited. Viewed in the light of our understanding of the quoted phrase and the facts before us, we conclude that the trial *Page 325 
judge was eminently correct in finding that the plaintiff was totally and permanently disabled within the meaning of our compensation statute and that his disability is solely attributable to the injury he received on March 8, 1941, and that therefore the judgment awarding compensation on that basis is correct.
Judgment affirmed.