63 So.2d 484 (1953)
STROTHER
v.
STANDARD ACC. INS. CO.
No. 3632.
Court of Appeal of Louisiana, First Circuit.
January 26, 1953.
Rehearing Denied March 19, 1953.
*485 Plauché & Plauché, Lake Charles, for appellant.
Jones, Kimball, Harper & Tete, Lake Charles, for appellee.
LOTTINGER, Judge.
This is a workmen's compensation proceeding in which the plaintiff, R. B. Strother, seeks to recover compensation at the maximum rate based on total permanent disability, plus $500 for medical expenses, subject to a credit for payments made over a period of 35 weeks. At the time of the alleged accident, plaintiff was employed by the Texas Southern Contracting Company and this suit was instituted directly against the latter's insurer, Standard Accident Insurance Company. After trial on the merits, in the court below, judgment was rendered in favor of the plaintiff, granting compensation at the rate of $30 per week during plaintiff's disability for a period not to exceed 400 weeks, subject to a credit for compensation previously paid for 35 weeks. The matter is now before us on an appeal taken by the defendant.
The lower court has written an able opinion, analyzing the facts and the law applicable to this case and we adopt same in part which is as follows:
"This is an action instituted under the provisions of the Louisiana Workmen's Compensation Act by R. B. Strother against Standard Accident Insurance Company, the insurer of Texas Southern Contracting Company, in which plaintiff contends that as the result of an accidental injury sustained by him during the course and scope of his employment by Texas Southern Contracting *486 Company, he is `unable to perform the usual work of his regular occupation.' He demands compensation payments at the maximum rate based on total permanent disability, plus $500.00 for medical expenses, subject to a credit for payments made, which payments he apparently concedes represent the compensation due for a period of thirty-five (35) weeks.
"The employment, the hazardous nature of said employment, the accident and the wages which plaintiff alleges were being received by him at the time of the accident, are admitted by defendant. Defendant denies, however, that plaintiff is presently disabled, or in the alternative, if he is disabled to any extent, that such disability is neither total nor permanent.
"The issues presented, therefore, are (1) the nature, extent and duration of plaintiff's disability, if any, and (2) the amount of compensation due plaintiff, if any, in the event the Court finds him to be disabled from doing work of a reasonable character to any degree. On the issues thus presented, the case was tried and is before the court at this time for decision on its merits.
"The injury which forms the basis for this suit occurred on September 18, 1950, in Cameron Parish. At that time plaintiff was employed by defendant's insured as a steamfitter in connection with the construction of a `fire ball' cross-country pipe line. He described his duties as `swamping on the caterpillar with a side boom attachment'. On the above mentioned date a fellow workman permitted the side boom of a caterpillar tractor to fall and strike him on the head and shoulders, knocking him over into a sitting position with his back bending forward to within sixteen inches of the ground, and causing compression fractures of two vertebrae designated as D-12 and L-1.
"Plaintiff received medical treatment, including hospitalization for a period of four or five weeks, until he was discharged by Dr. Gold on March 3, 1951. He was paid workmen's compensation at the maximum rate until March 14, 1951, after which time payment of compensation was discontinued. On or about December 18, 1950, however, or some months prior to the time his compensation payments were discontinued, plaintiff obtained other employment and was still so employed at the time of the trial on October 20, 1951.
"The evidence establishes to the satisfaction of this Court that from the year 1934 to the date of the accident, plaintiff had been employed as and had performed the duties of a steamfitter. A substantial portion of his employment during that period of time was in connection with the construction or maintenance of pipe lines, and it appears that approximately eleven months of his employment immediately preceding the accident was on `fireball' pipe line jobs. His duties as a steamfitter, particularly on pipe line jobs, are of a strenuous nature and require heavy lifting. This Court is convinced that on and prior to the date of the above described accident, plaintiff was accustomed to performing the duties of a steamfitter, and particularly the duties of a steamfitter in the construction or maintenance of pipe lines, and that his training, education and experience qualify him for that type of employment.
"The evidence further indicates that from and after December 18, 1950, plaintiff has been employed as an `expeditor', and that his duties as such have been principally of a clerical nature. The Court is convinced that since the accident occurred he has not done any hard manual labor and has done no heavy lifting as he had been accustomed to performing prior to the accident, although his wages have been as much or more per hour than he received prior to the time of his injury.
"Defendant contends primarily that plaintiff's suit must be dismissed for failure on the part of plaintiff to show disability, and it is argued that in view of the provisions of LSA-R.S. 23:1221(3) the same result must be reached if plaintiff is found to be partially disabled. The Court directs its attention, therefore, to the question of whether plaintiff is presently disabled, and if so, the nature and extent of such disability.
"Dr. M. H. Gold, who is engaged in the general practice of medicine, treated plaintiff from September 22, 1950, to March 3, 1951. On the last mentioned date the doctor discharged plaintiff with the report that he was `clinically well from any disability that he may have incurred, but he may experience *487 some slight pain and discomfort for several months to follow'. He testified that he saw plaintiff for the last time on March 3, 1951, and `at that time discharged him and instructed him to do limited work and still wear the brace from time to time as he needed it'. His further testimony in that respect is as follows:
"`Q. In other words, at that time, in your opinion, he was not able to resume the regular duties of his former occupation? A. Not the heavy duties that he had done before.'
"Dr. C. V. Hatchette, an orthopedic surgeon, first examined plaintiff on June 11, 1951, and found `old compression fractures of dorsal twelve and lumbar one, with minimal to moderate anterior wedging'. He testified that in his opinion, `Mr. Strother had had excellent attention and that he had recovered with a minimum of permanent disability; that insofar as his present job was concerned at that time, he was capable of doing it without trouble, but that for hard labor he might have a twenty-five percent permanent disability'. The wedging seen on X-ray examination, he stated, was undoubtedly permanent and would not improve with time. In his opinion plaintiff `might have pain as a result of heavy lifting or other types of manual labor'. He again examined plaintiff on September 26, 1951, found no change in his condition, and concluded that plaintiff `deserved a twenty-five percent estimate of permanent disability'.
"Counsel for defendant points out that Dr. Hatchette, in his further testimony, explained that the percentage of disability which he estimated should be restricted or limited to the performance of `heavy manual labor'. While this is true, the Court interprets his testimony to mean that in this doctor's opinion plaintiff is able to perform duties which do not require heavy manual labor, such as the type duties he has performed since December 18, 1950, but that he has a twenty-five percent disability with respect to employment which does require heavy manual labor or lifting, such as the duties which were performed by him on and prior to the date of the accident.
"Dr. Edmond C. Campbell, another orthopedic surgeon, examined plaintiff on November 15, 1951, at which time he found healed compression fractures of the twelfth dorsal and first lumbar vertebrae, with slight deformity consisting of wedging of the anterior portion of the bodies of these vertebrae. Dr. Campbell testified that in his opinion, plaintiff could not perform heavy manual labor now and, in fact, that he could not perform all of the duties of a plumber because of his limitation of motion and inability to get into awkward positions. He is further of the opinion, however, that although there is a permanent deformity of the bone structure of the two affected vertebrae, the disability is only of a temporary nature and plaintiff probably will be able to resume his regular employment within a period of one year from the date of the trial. Dr. Campbell's testimony to that effect may be summarized by the following statement which was made by him:
"`I feel that at some time in the future, and possibly within a year from this date this patient can improve considerably, even without treatment, but could improve better with some medical supervision, possibly to the point where he can resume his previous work.'
"Dr. J. Willard Dowell, an orthopedic surgeon, examined plaintiff on October 27, 1951. On that examination he found a slight residual wedging of the twelfth dorsal vertebra and a slight depression in the upper surface of the first lumbar vertebra, which condition he considered to be the result of a previous injury. He testified that in his opinion plaintiff is capable of performing the same type of work he was performing immediately prior to the date of the accident. Further elaborating on that opinion, he stated that plaintiff was `capable of doing pipefitting work, consisting of fitting pipes, driving a truck, going to a warehouse, helping to load and unload trucks, and doing general work incidental to the job of pipefitting'. He appears to qualify those statements to some extent, however, by the following testimony:
"`Q. Doctor, did you not estimate in your opinion and report dated October 29, 1951, that Mr. Strother, in your opinion, had a permanent disability of 20%? A. Yes, sir.'

*488 * * * * * *
"`Q. And it is your opinion he could do arduous manual labor with no discomfort? A. No, I said heI did not say that. I said he had some residual disability which means he would not perform his work as well as he did before, but I felt he is capable of performing it.
"`Q. And you fix that disability at 20%? A. Yes, sir.'

* * * * * *
"`Q. Assuming that this man should attempt to do arduous manual labor and should find himself, in the words which we call in the vernacular as being `down in the back', as having extreme backache, inability to move about freely and easily for a day or so, or for several days, would you find such a result to be inconsistent with your findings? A. No.'

* * * * * *
"`Q. I presume that when you come to your considered conclusion that Mr. Strother was capable of doing the same type of work at the time that you examined him as he was able to do prior to the injury, you took into consideration the 20% disability which you have testified to? A. Yes.'
"It appears, therefore, that in Dr. Gold's opinion plaintiff was not able to perform the heavy duties of a steamfitter on March 3, 1951, the last date on which the doctor examined him, but that the disability is of a temporary nature. Dr. Campbell feels that at the time of the trial plaintiff was disabled from performing the duties required of him in the occupation to which he was accustomed, but that the disability is of a temporary nature and recovery may be expected in one year from that date. Dr. Hatchette is of the opinion this plaintiff has a 25% disability in or as far as performing the duties of a steamfitter are concerned, and that the disability is permanent. Dr. Dowell estimates plaintiff's disability at 20%, and is of the opinion that his condition is of a permanent nature, but he feels that in spite of this disability, plaintiff is able to perform the duties formerly required of him as a steamfitter. While all of the medical reports seem to agree that plaintiff is disabled to some extent, either at the time he was last examined or at the time of the trial, they do not agree as to whether the disability is of a permanent or temporary nature.
"After considering all of the evidence, this Court concludes that although plaintiff is able to perform the duties of an `expeditor', which duties do not require hard manual labor or heavy lifting, he is not able to perform the duties of a steamfitter, and particularly the duties of a steamfitter in the maintenance and construction of pipe lines, which duties he was accustomed to performing on and prior to the date on which he received the injury which forms the basis of this suit.
"Plaintiff is a skilled or semiskilled employee, and the jurisprudence of this state has been established to the effect that such a worker will be regarded as totally disabled if he is unable to perform the kind of work he is trained to do, or customarily does, in the usual and customary way, and without any serious impairment of his capacity to perform such work. Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Thibodeaux v. W. Horace Williams Co., La.App., 14 So. 2d 320; Fisher v. Standard Accident Ins. Co., La.App., 28 So.2d 59; Brown v. Continental Oil Co., La.App., 22 So.2d 758; De Kerlegand v. Car & General Ins. Corp., Ltd., La.App., 30 So.2d 881; McKenzie v. Standard Motor Car Co., La.App., 15 So. 2d 115. And an injured employee's right to compensation under the circumstances hereinabove set out will not be affected or in any way prejudiced by the fact that he may have obtained employment in another occupation to which he is unaccustomed at a wage equal to or in excess of the wage which he was receiving at the time of the accident. Sumrall v. E. I. DuPont De Nemours & Co., La.App., 1 So.2d 430; Brown v. Continental Oil Co., 22 So.2d 758, supra; De Kerlegand v. Car & General Ins. Corp., Ltd., 30 So.2d 881, supra; Cobb v. A. G. McKee & Co., La.App., 45 So.2d 432.
"Applying the law, as interpreted by the jurisprudence above cited, to the facts of this case, it appears that plaintiff *489 must be held to be totally disabled from performing work of a reasonable character within the meaning of the Workmen's Compensation Act, and that he is entitled to an award of compensation on that basis.
"Counsel for defendant argues, however, that the evidence, at most, indicates only a partial disability, and that the formula set out in LSA-R.S. 23:1221(3) should be applied. As authority for that contention he cites the case of Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739. In the Morgan case, however, the injured employee was found to be a `common laborer', and after the accident he not only was able to obtain employment in that same type of work, but he actually had done so. Although he was partially disabled from performing manual labor to the extent of approximately 20%, the kinds, types or classes of common labor are so broad and varied that he was able to obtain other employment of that nature in spite of his partial disability, and the Court could properly apply the provisions of the Workmen's Compensation Act relating to partial disability. In the present case, however, plaintiff is a skilled or semiskilled employee, and because of his inability to do a substantial part of the hard manual labor and heavy lifting required of a steamfitter in pipe line work, this Court has concluded that he is wholly incapacitated from holding a job as a steamfitter in that type work, being the occupation to which he is accustomed.
"Counsel for defendant further contends alternatively that plaintiff at most is entitled to an award for a limited period of time, not exceeding one year from the date of the trial, under the provisions of LSA-R.S. 23:1222. Since the evidence is conflicting, however, as to whether the disability is of a permanent or a temporary nature, the Court is unable to determine whether plaintiff will recover from the disability and, if so, when such recovery might be expected. Under those circumstances, compensation should be awarded during the period of disability, not to exceed the maximum allowed for permanent total disability. The defendant is protected by the provisions in the statute which permit a review of the judgment at six month periods. Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, 25 So.2d 256; Gilmore v. George W. Garig Transfer, Inc., La.App., 33 So.2d 99.
"Further in the alternative, defendant contends that plaintiff should receive the alleged percentage of disability multiplied by the maximum amount of compensation to which he would be entitled, per week, for a period not to exceed 300 weeks, subject to a credit for compensation heretofore paid. As authority for that argument, the cases of Smith v. Simplex Oil Co., 12 La.App. 338, 124 So. 584; Thibeau v. Dutton & Mercer, 17 La.App. 338, 136, So. 186, and Fulmer v. McDade Gin Co., La.App., 142 So. 733, are cited.
"Before that formula could be applied, however, it would be necessary for the Court to conclude that plaintiff is only partially disabled from performing the duties of a steamfitter in pipe line work. This Court has concluded that because of his inability to do a substantial portion of the duties required of such an employee, he is wholly incapacitated from holding a job as a steamfitter in that type work, and therefore is totally disabled within the meaning of the compensation law."
The record certainly fails to disclose any manifest error on the part of the trial judge and we agree with him that the plaintiff or appellee in this case is entitled to the award as rendered below. Therefore, for the above and foregoing reasons, the judgment appealed from is affirmed.
Judgment affirmed.

On Application for Rehearing
PER CURIAM.
In his application for rehearing, counsel for defendant-appellant stresses the fact that we did not discuss the case of Brannon v. Zurich General Accident & Liability Ins. Co., reported La.App., 61 So.2d 257, in our original opinion.
We did not discuss it as we considered the case inapposite, however, if apposite, we do not choose to follow it.
For these reasons the rehearing is refused.