SAMUEL, Judge.
Plaintiff, Matthew J. Franicevich and two corporations of which Franicevich was president and for whom he acted, instituted this suit against the defendant for $1,460.-00, $1,300.00 of which represented unpaid charter hire for the lugger Mary Jane, the balance thereof, $160.00, representing repairs to defendant’s vessels. It was stipulated during the trial that the $1,300.00 figure was incorrect due to a mathematical error in counting days and that figure accordingly was reduced to $1,235.00. Hereafter we refer to Franicevich himself, rather than all plaintiffs, as “plaintiff”.
The defendant pleaded payment of the $160.00 claim but at the trial stipulated that this amount was due. He also pleaded that the debt of $1,235.00 had been extinguished by remission when the plaintiff orally agreed to release the defendant therefrom in return for which the defendant had released plaintiff from the charter contract.
The trial court judgment awarded plaintiffs the sum of $160.00 but denied them the $1,235.00 balance allegedly still due under the charter. Plaintiffs have appealed.
The only matter in dispute before this court is whether or not the claim of $1,235.00 for unpaid charter hire was remitted by plaintiff. There is no dispute as to the following facts: The Mary Jane was chartered by Dumas from Franicevich, the agreement being oral but evidenced by a memorandum reduced to writing and signed by both parties. The memorandum stipulated that the lugger would work for Dumas “for the duration of his order” at a rate of $60.00 per day in the West Bay area of Plaquemines Parish, all fuel to be furnished at no cost to Franicevich. The litigants agree that under the charter the crew was to be furnished by the owner. By subsequent oral agreement the daily rate was increased to $65.00. Dumas sub-chartered the vessel to Continental Oil Company for $80.00 per day, apparently under an agreement by which that company could cancel at any time. Later both parties desired to withdraw from the charter agreement, Dumas because he was dissatisfied with the insurance arrangements and the conduct of the vessel’s personnel which resulted in complaints by the oil company, and Franicevich because of a misunderstanding as to insurance and the fact that the boat was working outside of Southwest Pass which, as he explained, was “offshore” rather than “inside”, the West Bay area as set out in the memorandum being “inside”. Accordingly, arrangements were made with Continental Oil Company to charter the boat directly from Franicevich at a rate of $75.00 per day and the vessel worked under this new charter between the oil company and the plaintiff beginning June 20, 1961. The sum in suit, $1,235.00, represents rental due by Dumas from June 1, 1961 through June 19, 1961.
*118 Only three witnesses, plaintiff, defendant and defendant’s employee, Franco, testified during the trial. The plaintiff testified that he and the defendant had mutually agreed to withdraw from their charter. He emphatically denied that he had ever agreed to release, or had ever released, the defendant from the payment of rentals due by the latter to him.
The defendant’s testimony is: During the first week of June, 1961, he and the plaintiff agreed that the Mary Jane could work directly for the oil company without the defendant’s intervention and that he, the defendant, would assist the plaintiff in obtaining a charter from the oil company and would release the plaintiff from any further obligation under the charter contract then existing between the two litigants. This was to be done for a consideration which was not settled at that time but was to be- agreed upon later. In the latter part of June, approximately on June 28, 1961, he and the plaintiff agreed that the consideration for his release of Franicevich from the charter would be the release of the $1,235.00 rentals due by the defendant and at that time, on or about June 28, 1961, plaintiff did orally release that amount. The release was not reduced to writing.
Defendant’s witness, Franco, testified that he was employed by the defendant both at the time of trial and during the month of June, 1961. That, while working on one of the defendant’s vessels repairing a propeller he heard a conversation, or part of a conversation, between plaintiff and defendant during which he heard the plaintiff say that he would release defendant from payment of the money, that is, that he would “call it even”.
The trial court was of the opinion that the parties did “call it even”, that plaintiff had breached his charter contract, was responsible for any damages caused thereby, and therefore had a reason for the subsequent release. But there is nothing in the record which suggests a breach of contract on the part of plaintiff. All of the evidence is to the effect that the parties mutually withdrew from the contract. Even the defendant’s testimony is to that effect.. The trial court was in error in finding that the plaintiff had breached the contract.
We find it necessary to either discredit or completely disregard the testimony of defendant’s employee, Franco. That witness stated he heard the conversation between plaintiff and defendant at plaintiff’s-shipyard during the latter part of the month of June, 1961, while one of the defendant’s boats, which the witness believed to be the Virginia or the Silver Streak, was pulled up and he, the witness, was changing the vessel’s wheels. He said he did not hear all of the conversation because he was working at the time. His exact testimony is as follows:
“Q1 Now, do you have any personal knowledge of any agreement that existed between Mr. Franicevich and Mr. Dumas concerning the operation of the vessel?
“A I know it was working through Mr. Dumas.
“Q Now, were you ever present at any discussion between Mr. Dumas and Mr. Franicevich concerning the Mary Jane?
“A On one occasion.
“Q Explain it to us, please?
“A We were down at Mr. Franice-vich’s shipyard and Mr. Dumas and Mr. Franicevich were talking about the job with the boat, and they were having a discussion. I wasn’t listening but what I overheard that Mr. Dumas turned the boat aloose under his contract with Continental to Mr. Franicevich. He could work straight for Continental and Mr. Dumas would just get out of it.
*119 “BY THE COURT:
“Q Did you hear anything else, Mr. Franco?
“A Yes, sir, I heard that Mr. Dumas told Mr. Franicevich, he said that if you get the job, you can work straight through Continental, that we would be even on the contract and with the money. How much money, I couldn’t say. They were speaking of money there.
“BY MR. FARRIER:
“Q Did Mr. Franicevich agree to it?
“A Yes, sir, he said if I work straight for them, me and you will be even.
“Q Do you remember when that was?
“A That’s around June, the latter part of June.”
Franicevich denied that Dumas had any vessel pulled up in his shipyard at any time during the month of June and this denial was not disproved in any way although the defendant had the opportunity of offering such proof. In addition, and much more important, Franco’s testimony concerning the discussion he overheard between Fran-icevich and Dumas clearly states that Franicevich would release the indebtedness if he obtained the work from, and worked straight through, Continental. He stated this twice: “* * * if you get the job, you can work straight through Continental, that we would be even on the contract and with the money.” and “ * * * he said if I work straight for them, me and you will be even.” This conversation is supposed to have taken place in the latter part of June, 1961. But the fact is that on the date on which the conversation is supposed to have taken place the Mary Jane was already working for Continental, directly through Franicevich and without Dumas’ intervention. The record clearly shows, and it is not disputed, that the vessel was so working for Continental on and after June 20, 1961, and, according to Dumas’ testimony, only one other conversation relative to the question now being considered had taken place between him and Franice-vich and that was during the first week of June and the consideration, i. e., plaintiff’s release of the debt, was not agreed upon in that first conversation.
We note with interest that the answer filed by Dumas to plaintiffs’ petition, which answer is sworn to in an affidavit signed by Dumas in which Dumas states that he has read the answer and it is correct to the best of his knowledge and belief, alleges as a special defense that the item of $160.00 claimed in the petition was extinguished by payment. Yet, during the course of the trial defendant admitted the correctness of this item, stipulated that plaintiff was entitled to a judgment in that amount, and thus admitted that the item had never been paid. In addition, Dumas testified that he was never behind in his payment of rentals due under the charter. But we are satisfied from all of the record that this statement is not true, that the rental payments he did make were not timely and were actually late, contrary to his testimony.
It seems to us unlikely that Franicevich would give up a perfectly good claim for $1,235.00 in return for a direct charter with the oil company and the release of his contract with Dumas. Considering the fact that he was making $10.00 per day on the Dumas charter and that he would make only $15.00 per day, less the cost of each day’s fuel, under the direct contract with Continental, it would have taken him a long time, well in excess of four months, to recoup the $1,235.00 which, in effect, he already had, even not considering the wear and tear of the vessel while engaged in the operation during that period of time, the possibility of a cancellation by the oil company at any time, and other related items.
While remission need not be in writing and need not be in any particular form (LSA-Civil Code Art. 2199; Haley v. Badon, La.App., 98 So.2d 109; Noto v. Blasco, La.App., 198 So. 429; Mouton v. Noble, 1 La.Ann. 192; see also Gremillion *120 v. Dubea, La.App., 108 So.2d 238), the burden of proof is on the defendant. Gulf States Finance Corp. v. Moses, La.App., 56 So.2d 221; Thibodeaux v. W. Horace Williams Co., La.App., 14 So.2d 320. And the proof must be, at least, by a preponderance of the evidence. Doucet v. Dugas, La.App., 165 So. 754.
We are of the opinion that the defendant has failed to prove his plea of remission by a preponderance of the evidence as required by the law.
For the reasons assigned, the judgment appealed from is amended by increasing the amount thereof to $1,395.00 and as thus amended, and in all other respects, the judgment is affirmed; defendant-appellee to pay the cost of this appeal.
Amended and affirmed.