AYRES, Judge.
By this action plaintiff corporation seeks to recover the sum of $8,906.75 withdrawn from its bank account by defendant. Although defendant, as a former officer and as a principal stockholder of the corporation, possessed the authority to withdraw corporate funds from its bank accounts, it is contended this particular withdrawal was unauthorized inasmuch as immediately preceding the withdrawal defendant had sold her stock in the corporation and had resigned her official position.
*191 The defense is that the check on which the withdrawal was made was prepared by plaintiff’s bookkeeper in the exact amount the corporate books and records reflected as being due defendant; that the funds were, in fact, her money; that plaintiff had dealt with these funds as hers; that she acted in the utmost good faith in making the withdrawal and that, therefore, she owes plaintiff nothing. In the alternative and only in the event it should be held that her withdrawal of the funds was unauthorized and unwarranted, then, in that event, defendant alleges that plaintiff is indebted unto her in the aforesaid sum and that, accordingly, she should have judgment against plaintiff. Defendant claims of plaintiff an additional sum of $250.00 representing her unpaid last month’s salary.
' After trial, there was judgment in favor of plaintiff as prayed for. Defendant’s re-conventional demands were rejected. She prosecutes this suspensive appeal.
The issues are almost entirely factual. For their appreciation, a statement as to the relationship of the parties seems appropriate.
In May of 1956, defendant’s husband and one Roy Thornton formed a partnership under the name of Thornton and Brooks, the purpose of which was the drilling and servicing of oil and gas wells. Brooks supplied two drilling rigs to be operated by Thornton. They were to share equally in the profits or losses. In August of the same year, Brooks died. Thereafter, the partnership was continued by Thornton and Mrs. Brooks, apparently with some success.
However, in late 1961 Thornton and Mrs. Brooks organized a corporation under the name of Thornton & Brooks, Inc. They, with Mrs. Thornton, were the stockholders. The Thorntons owned 50% of the corporate stock; Mrs. Brooks, the remainder. Thornton was president and manager; Mrs. Brooks, secretary and treasurer. The nature of the business pursued was the same as that of the former partnership. The corporation had a paid-in capital stock of $1,000.00.
The partners furnished the required operating capital in the nature of loans made to the corporation. Both Thornton and Mrs. Brooks were authorized to, and did,, at will, make withdrawals from the corporate funds, not only as dividends from the profits reálized but in payment of loans, made by them to the corporation. By agreement strictly adhered to, whenever a withdrawal was made by either Thornton or Mrs. Brooks, a check in an equal amount was issued to the other. Thus, it is seen that both were authorized to issue checks on the corporate accounts.
During the year 1962, Thornton & Brooks, Inc., did considerable work for the World Wide Petroleum Corporation, headed by one-Gordon M. LeBlanc as president. This-latter corporation became involved in debt, which it was unable to pay and, as a result thereof, it was unable to operate three wells which it had caused to be drilled and brought in as producers on a lease known as the-“Olin” lease. One of the creditors was-Thornton & Brooks, Inc. The amount of this debt, not definitely established,, appears to have been of some significance. Under this state of facts, Thornton and one Joe T. Cawthorn formulated a plan for the relief of not only LeBlanc’s corporation but also plaintiff corporation, as well as a plan, ultimately, for a profit. Cawthorn-was the owner of all the capital stock in an-inactive corporation known as the Acadian Oil & Gas Corporation.
Pursuant to the agreement between-Cawthorn and Thornton, Cawthorn borrowed $20,000.00 which he placed with his-corporation. Thornton supposedly contributed the obligation due Thornton & Brooks,, Inc., by the World Wide Petroleum Corporation, apparently in exchange for stock in Cawthorn’s corporation. Thereupon,. Cawthorn and Thornton, through a sublease from the World Wide Petroleum Corporation, took over the operation of the “Olin”' lease. The lessor retained a ¡4 interest *192 in the lease. This operation was successful. The debts of the sublessor, including the debt due Thornton & Brooks, Inc., were paid and a profit realized. Out of the profits, Cawthorn was paid $20,000.00; a like sum, transmitted to Thornton & Brooks, Inc., was paid Thornton.
Defendant’s claim to the ownership of the sum withdrawn from plaintiff’s corporate bank account, or, in the alternative, her claim as a creditor of Thornton & Brooks, Inc., arises out of the aforesaid •$20,000.00 received from the Acadian Oil & Gas Corporation. Plaintiff’s books and records reflect that this sum, in the proportion of 1/2 to each, was owned by or due 'Thornton and Mrs. Brooks individually.
The record establishes that the stock acquired in the Acadian Oil & Gas Corporation in Thornton’s name was acquired by him for and on his and Mrs. Brooks’ 'behalf, in their individual capacities. In explaining the venture undertaken by 'Thornton with Cawthorn and his corporation, plaintiff’s attorney, Gordon B. Golsan, Jr., wrote defendant under date of January 10, 1962, that the 10 shares of the capital stock in that corporation acquired by Thorn- ■ ton were acquired for and owned by her and Thornton in the proportion of Yz each. Moreover, there was transmitted to Mrs. Brooks, with the letter, Thornton’s affidavit reciting the fact of the acquisition of the 10 shares of stock “and that this stock is in his name as a matter of convenience only and in reality is owned Y2 by him and Y2 by Mrs. Louise L. Brooks * * One of the witnesses to Thornton’s signature on the affidavit was plaintiff’s attorney.
Moreover, plaintiff’s contention that the stock was purchased with the assets of the corporation is not supported by the evidence. The record discloses, contrary to plaintiff’s contention, that the obligation of the World Wide Petroleum Corporation was not contributed to the purchase but that this obligation was fully paid, as were its other debts and obligations.
During early 1963, negotiations were begun for the purchase by Thornton of Mrs. Brooks’ stock in plaintiff corporation. Preparatory thereto, Mrs. Brooks caused an audit to be made of the corporate business and affairs to determine the net worth and value of her stock. Copies of the auditor’s report were furnished Thornton as well as Golsan, plaintiff’s counsel, who, Mrs. Brooks learned on the date of the sale, was joining Thornton as a purchaser of her stock. This audit, dated April 30, 1963, lists
“FIXED LIABILITIES
Loan Payable — Roy Thornton $10,176.04
Loan Payable — Louise Brooks 10,176.04 $20,352.08”
'The audit reflected a net worth of the cor- ■ poration, after deducting the aforesaid fixed liabilities, as well as certain current liabilities, in the sum of $110,174.31. It was on this basis that Mrs. Brooks sold her stock -and received $55,000.00 therefor. The sale was effected May 31, 1963, at plaintiff’s •office in Mansfield. The purchasers were Thornton and Gordon B. Golsan, Jr.
Prior to leaving Oil City, where she -.resided, for Mansfield where she was to sell her stock, Mrs. Brooks called on plaintiff’s bookkeeper with reference to the payment of the indebtedness due her. The bookkeeper was not then in possession of information as to a final remittance from the Acadian Oil & Gas Corporation and was therefore unable to write the check for the total of the indebtedness claimed by Mrs. Brooks. While in Mansfield, Mrs. Brooks made inquiry and obtained the information with reference to the remittance; where *193 upon, upon returning to Oil City, the information was given the bookkeeper who thereupon prepared the check which was signed by Mrs. Brooks on behalf of the corporation.
It may be here noted that, of the amount credited to Thornton and Mrs. Brooks individually from the funds received from the Acadian Oil & Gas Corporation, both Thornton and Mrs. Brooks took into account the amount received or due each of them in their income tax returns and paid the tax due thereon. The returns prepared for them by certified public accountants were, as to these items, predicated upon the corporation’s books and records and upon the repeated assertions of Thornton, particularly, and Mrs. Brooks that these funds were their individual properties. The corporation did not claim the funds, nor did it make any return or pay income tax thereon.
Plaintiff nevertheless contends that defendant’s unorthodox manner of collecting an obligation claimed due her, particularly in her lack of authority at the time to represent the corporation, imposes upon her the duty of justifying her actions. Granted that such a burden is thus cast upon defendant, the conclusion is inescapable that she has sustained her obligation and burden of proof. The evidence to which we have already referred, such as Thornton’s, plaintiff’s president’s affidavit of defendant’s ownership of Yi the stock acquired from the Acadian Oil & Gas Corporation, supported by counsel’s declaration of her ownership, the corporate books and records reflecting such ownership, the declarations of the parties with reference thereto, and the payment of income tax thereon, clearly establish, in our opinion, that these funds were those of Thornton and Mrs. Brooks in their individual capacities and not the funds of the corporation. It could scarcely be denied that such proof and the treatment of such funds by the corporation itself, as obligations due the individuals, establish at least a prima-facie case in defendant’s favor. This showing has not been rebutted or overcome by plaintiff.
Nor do we find any merit in plaintiff’s contention that the defendant, in selling her stock in the corporation, renounced or remitted the corporation’s obligation or debt. The corporation was not a party to the sale of the shares of stock. Neither during the negotiations nor at the time of the sale was any mention made relative to defendant’s renunciation or remission of the obligation due her by the corporation. The testimony of all the parties on this point is in agreement. Under the general rule, he who contends he has been exonerated must establish the fact which has produced the extinction of the obligation (LSA-C.C. Art. 2232), and, notwithstanding the fact that a remission of an obligation may be either conventional or tacit (LSA-C.C. Art. 2199), “Deeply imbedded in our law is the old axiom that no one is presumed to have renounced a right unless it clearly appears that he intended to so do, * * and the burden is upon those who claim to have been thus relieved of their obligation to establish that fact. Payton v. Jones, La.App., Orleans 1949, 38 So.2d 631; Pitre v. Bourg, La.App., 1st Cir.1954, 77 So.2d 113; In re Pan American Life Insurance Company, La.App., 2d Cir.1956, 88 So.2d 410; Franicevich v. Dumas, La.App., 4th Cir.1963, 150 So.2d 116.
The record is barren of any proof supporting plaintiff’s position as to defendant’s remission of the corporation’s obligations. Plaintiff has therefore established no basis for recover}'-. If defendant’s act in withdrawing plaintiff’s funds from its bank account were technically unauthorized, defendant has established that a sum equal to the amount withdrawn was due her. Therefore, a judgment in favor of plaintiff would be extinguished by compensation and offset by a judgment to which, in that event, defendant would be entitled against plaintiff.
The record lastly establishes that defendant was employed by plaintiff corporation at a salary of $250.00 per month. She was *194 not paid her last month’s salary. This she should recover in reconvention; no contention is apparently made to the contrary.
Therefore, for the reasons herein assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed that plaintiff’s demands be, and they are hereby, rejected and its suit dismissed; and
It is further Ordered, Adjudged, and Decreed there be judgment herein in favor of the defendant, Mrs. Louise L. Brooks, in reconvention against the plaintiff, Thornton & Brooks, Inc., for the full sum of $250.00 with 5% per annum interest thereon from judicial demand until paid; and
It is further Ordered, Adjudged, and Decreed that plaintiff-appellee pay all costs, including the cost of this appeal.
Reversed and rendered.