HOOD, Judge ad hoc.
This is a workmen’s compensation suit instituted by Sabay Fontenot against the Travelers Insurance Company, the latter being the compensation insurer of Brown Oil Tools, Inc. Plaintiff alleges that while in the course of his employment by Brown Oil Tools, Inc., he accidently sustained an injury to his right knee, which has rendered him totally and permanently disabled from the performance of his trade and occupation. After the trial of the case on its merits, the trial court rendered judgment in favor of plaintiff for the full amount of compensation claimed, plus penalties and attorney’s fees. From this judgment defendant has appealed.
The evidence establishes that on June 10, 1956, plaintiff sustained an accidental *176 injury to his right knee while in the course of his employment by Brown Oil Tools, Inc. The accident occurred about 3:30 o’clock in the afternoon while plaintiff and some follow employees were testing a pipe for leaks. Plaintiff was endeavoring to connect a 4-inch water hose to an iron pipe, when the foreman suddenly turned on the pressure, causing the metal nozzle of the hose and the pipe to strike plaintiff’s right leg, just above the knee. Plaintiff continued to work the rest of that day and he worked until noon the following day when the job was completed. The accident was not reported to the foreman or to any officer of the employer at that time. Defendant received its first notice of the claim on July 12, 1956, and this suit was filed 26 days later, on August 7, 1956.
Defendant has paid to plaintiff all compensation due from the date of the accident up to and including May 19, 1957, together with all medical expenses incurred in the treatment of plaintiff’s injuries. One of the issues presented is whether plaintiff had recovered by May 19, 1957, from the in-: juries sustained by him as a result of that accident. The trial judge concluded that plaintiff was still disabled on that date, and appellant contends that the court was in error in arriving at that conclusion.
The evidence establishes that on June 11, 1956, or the day after the accident occurred,1 plaintiff was examined by Dr. R. A. Fonte-not, a physician engaged in the general practice of medicine, who at that time diagnosed the injury as “a sprain of the right knee with probable injury to the tibial collateral ligament.” After further examination he concluded that plaintiff also “might have some injury to the anterior arcuate ligament, also in the knee joint.” Dr. Fon-tenot saw plaintiff and treated him for several months after the date of the accident. He testified that all objective signs of the injury disappeared by September, 1956, except for a slight atrophy of the right thigh muscles. Because of this atrophy plaintiff was referred to Dr. James Gilly, an orthopedic surgeon, who also treated plaintiff. Dr. Fontenot further testified that by May, 1957, the atrophy had completely disappeared, and that in his opinion plaintiff had fully recovered from the injury to his knee. Plaintiff made no complaints of injury to or pain in his back at any time, so Dr. Fonte-not made no examination of that part of his body.
Dr. Gilly examined plaintiff on September 25, 1956, and on January 28 and May 6, 1957. On the first examination he tentatively diagnosed the injury as a “tear of the medial semilunar cartilage.” Subsequent examinations and treatment, however, proved this diagnosis to be incorrect, and Dr. Gilly finally concluded that as a result of the accident which occurred on June 10, 1956, plaintiff had sustained a “sprain of the knee with prolonging convalescence due to muscular atrophy.” Physiotherapy treatments were administered to plaintiff from March 7 to about the fix*st of May, 1957. On May 6, 1957, Dr. Gilly found that the atrophy in plaintiff’s thigh muscles had completely disappeared, that the ligamentous structures, were intact, that tests for tear of the cartilages -were negative, and that full range of motion was. pres.ent in the joint. He concluded, therefore,- that plaintiff had completely recovered from his injury by that date and that he had no residual disability from that injury. There was nothing in -the history given by plaintiff or in the examinations made by Dr. Gilly which indicated any traumatic involvement of the back or sciatic nerve, so no examination was made by him for such injury.
Dr. George B. Briel, an orthopedic surgeon, made a complete orthopedic examination of plaintiff’s back and legs on June 7, 1957. He testified that as far as he could determine at that time plaintiff’s knee was perfectly normal in all reactions to all tests that were performed. Dr. Briel, however, did find an abnormal condition of plaintiff’s back, which he described as “a moderate posterior narrowing of the lumbosacral disc interspace and a spina bifida occulta of sacral 1,” together with a "C”- curve scolio *177 sis caused by the fact that plaintiff’s right leg is shorter than the left. Dr. Briel concluded that this abnormal condition of plaintiff’s back was causing a sciatic nerve irritation with pain radiating down plaintiff’s right leg. The spina bifida occulta, of course, is congenital, and the scoliosis and the difference in the length of plaintiff’s legs existed long before the accident occurred. Although Dr. Briel concluded that plaintiff had a very definite sciatic nerve irritation, which he described as being either sciatic neuritis or sciatic neuralgia, he could find no connection between this condition and the accident which occurred on June 10, 1956. Plaintiff, in fact, told Dr. Briel, as he did the other doctors who examined him, that he did not hurt or twist his back at the time of the accident.
In his petition plaintiff alleges only that he sustained an injury to his right knee, and he specifically described the injury as follows: “* * * his knee was sprained and the collateral tibia ligament was injured.” He does not allege any injury to or disabling condition of his back or of the sciatic nerve. The evidence indicates that plaintiff has never complained of an injury to his back to anyone, including the doctors who examined him. At the trial he testified as follows:
“Q. Now Mr. Fontenot, did you ever have any trouble with your back? A. I never noticed that my back bothered me.
“Q. You never did tell Dr. Briel there was anything wrong with your back, did you? A. I told him I had nothing wrong with my back.
“Q. And that was true, wasn’t it? A. Yes.
“Q. And you never told Dr. Gilly there was anything wrong with your back, did you? A. No, I didn’t say anything.”
***** *
“Q. When did you start having trouble with your back ? A. When my knee stopped swelling and hurting it hurt in my hip, it’s not in my back, it’s in my hip.”
We interpret plaintiff’s testimony to be that the pain in his “hip,” which we assume to be the pain caused by the sciatic nerve irritation, did not appear until after his knee “stopped swelling and hurting.” In his testimony he fixed the time when his knee stopped swelling as being a few days before his last visit to Dr. Gilly on May 6, 1957. It appears from plaintiff’s testimony, therefore, that the pain resulting from the sciatic nerve irritation first appeared in April or May, 1957, or at least 10 months after the accident occurred. This seems to confirm Dr. Briel’s conclusion that there is no connection between the accident and his present symptoms.
The trial judge concluded that there was conflict in the medical testimony, and for that reason he relied on the testimony of lay witnesses to determine whether plaintiff was or was not disabled. We have examined the testimony of the three medical experts carefully and fail to find any conflict in their testimony. Dr. Fontenot and Dr. Gilly examined plaintiff only for an injury to his knee. They found that he sustained such an injury, but had fully recovered without any residual disability by May 6, 1957. Dr. Briel examined plaintiff one month later, on June 7, 1957, and at that time he also found no residual disability to the knee. His testimony in that respect, therefore, is in complete accord with that of the other doctors who examined and treated plaintiff. Dr. Briel is the only doctor who examined plaintiff’s back, and is the only medical expert who testified as to the condition of that part of his body. His testimony is to the effect that plaintiff has a sciatic nerve irritation, but that there is no causal connection between that condition and the accident which he sustained on June 10, 1956. None of the other medical experts contradicted any part of his testimony.
We, of course, are reluctant to reverse the trial judge on a question of fact, but *178 in this case we feel that he erred in concluding that there was a conflict in the medical testimony and in ignoring that portion of the evidence. We conclude that as a result of this accident which occurred on June 10, 1956, plaintiff sustained a sprain of his right knee, with injury to some of the ligaments in the knee, and that his convalescence was prolonged because of muscular atrophy. This injury caused him to be disabled from the date of the accident until May 6, 1957, but the evidence establishes that by the last mentioned date he had fully recovered from that injury with no residual disability to the knee. The evidence fails to establish a causal connection between the accident and any other disabling condition which he may have.
Since plaintiff has received from defendant the full amount of compensation due from the date of the accident to May 19, 1957, and all of plaintiff’s medical expenses have been paid, his demands for additional compensation, medical expenses, penalties and attorney’s fees must be rejected.
In view of this conclusion it is not necessary for the court to consider the additional argument advanced by appellant to the effect that the trial court erred in considering evidence relating to an injury to the back or to the sciatic nerve, since plaintiff alleged only an injury to the right knee.
For the reasons assigned the judgment appealed from is reversed, and accordingly it is ordered, adjudged and decreed that judgment be renderd in favor of defendant, The Travelers Insurance Company, and against plaintiff, Sabay Fontenot, rejecting plaintiff’s demands, and dismissing this suit at his costs.