125 So.2d 478 (1960)
Roosevelt JOHNSON
v.
Robert CLOUD.
No. 116.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 11, 1961.
Certiorari Denied February 15, 1961.
*479 Hall & Coltharp, By: L. H. Coltharp, DeRidder, for defendant-appellant.
Alfred Ray Ryder, Oberlin, for plaintiff-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a suit for workmen's compensation benefits, in which plaintiff alleges total and permanent disability resulting from accidental injuries sustained by him while employed by defendant. The trial court rendered judgment in favor of plaintiff, awarding compensation during plaintiff's disability but not to exceed 400 weeks, less compensation payments which previously had been made. Defendant has appealed from that judgment.
The evidence establishes that an accident occurred about 8:30 A. M. on January 19, 1959, during the course of plaintiff's employment as a pulp wood hauler, and that as a result of that accident plaintiff sustained injuries to his back and chest. Defendant paid all medical and hospital bills incurred in the treatment of plaintiff's injuries, and he also timely paid compensation to plaintiff at the rate of $26 per week from the date of the accident until February 23, 1959. No further payments of compensation have been made since the lastmentioned date. Defendant contends that plaintiff had fully recovered from his injuries by February 23, 1959, that he has not been disabled from performing his customary duties since that date, and that the trial judge erred in holding that he was totally and permanently disabled.
Plaintiff's injuries were sustained when he stepped into a hole and fell while he was carrying a piece of timber which weighed between 100 and 200 pounds. As he fell, he dropped the piece of wood which was being carried, and it struck his left leg and then rolled off his body. He remained on the ground for a few minutes before getting up, and upon getting to his feet he immediately complained of pain in his back.
Dr. L. F. Gray, a general practitioner, made a clinical and x-ray examination of plaintiff on January 21, 1959, two days after the accident, occurred, at which time plaintiff complained of pain in his chest and low back area. The x-rays taken by Dr. Gray were negative as to any injury or abnormalities, and his clinical findings were simply that plaintiff had sore muscles in his chest and complaints of pain in his low back area. Dr. Gray treated plaintiff from January 21 to February 22, 1959, the treatment consisting of hospitalization from January 21 to January 24, and out-patient physiotherapy treatments almost daily from February 2 to February 21. While in the hospital, plaintiff's treatment consisted of sedatives and diathermy. Dr. Gray discharged plaintiff on February 22, 1959, as being fully recovered and able to return to work. Dr. Gray, of course, is the only physician who treated plaintiff, and he was called by and testified as a witness for plaintiff.
Dr. A. Scott Hamilton, an orthopedic surgeon, examined plaintiff on September *480 16, 1959, about eight months after the accident occurred. X-rays taken at that time revealed a condition which he labeled as a "reversed spondylolisthesis" or "sacrolisthesis," and which he described as a backward displacement of the fifth lumbar vertebra. In his opinion the trauma which plaintiff sustained on January 19, 1959, could have caused this abnormality or could have aggravated a pre-existing displacement of this vertebra to the extent that it became symptomatic. Upon clinical examination, Dr. Hamilton found muscle spasm on either side of the spine throughout the entire lumbar region, but other tests administered by the doctor suggested that a great deal of the muscle spasm was due to poor posture of plaintiff rather than to a back injury. Except for this muscle spasm and the condition described by him as sacrolisthesis, no other objective sign of injury was found by Dr. Hamilton. He concluded that because of the abnormality in plaintiff's low back area he was not able to perform heavy manual labor at the time of that examination.
During the same month in which Dr. Hamilton's examination was made, plaintiff also was examined by three other doctors, all of whom disagree with the conclusions reached by Dr. Hamilton. Dr. Norman P. Morin, an orthopedic surgeon, examined plaintiff on September 15, 1959. He testified that although x-rays taken by him on that date showed that the fifth lumbar vertebra was somewhat posteriorly displaced, he considered that to be a normal variance in the alignment and in his opinion this condition did not result from the accident. Dr. Morin felt that plaintiff had no disabling condition at the time that examination was made and that he was able to return to hard manual labor.
Dr. Edmond C. Campbell, an orthopedic surgeon, examined plaintiff on September 28, 1959, and found mild spasm of the lumber muscles while plaintiff was standing but none while he was sitting or lying down. Since the spasm was present only while plaintiff was in one position, the doctor attached no particular significance to that finding. He examined x-rays of plaintiff's low back region made by Dr. Warshaw on that date, and concluded that they showed no evidence of bony injury or disease. He testified that in his opinion the condition which Dr. Hamilton had described as a reversed spondylolisthesis was not due to a mal-alignment of the spine, but was due simply to some difference in the diameter of these two adjoining vertebra, that it does not represent an instable spine and is not likely to cause nerve root pressure. He testified that his examination disclosed no evidence of disability and that in his opinion plaintiff was able to resume his previous work.
Dr. Leslie M. Warshaw, a radiologist, made x-rays of plaintiff's low back region on September 28, 1959, at the request of Dr. Campbell. He interpreted these x-rays as showing no abnormality except a straightening of the normal lumbar curvature, suggestive of extrinsic muscle spasm and moderate narrowing of the L5-S1 interspace. He testified as follows:
"Q. Now, in your opinion, do the x-rays which you made of Roosevelt Johnson reflect any abnormal alignment of the lumbar vertebra known as L5 and the sacrum? A. No. There is no evidence of abnormal alignment of the L5 and S1. Now, there is a common condition present which I do not bother to describe because it is very common in that the anterior posterior dimension of S1 is foreshortened in relation to L5 and I measured these and S1 is 3 millimeters shorter, thus giving the appearance, and its is strictly a visual appearance, of posterior displacement of the body of L5 on S1, but this does not exist. It is a normal variance."
In Dr. Warshaw's opinion there was no condition in plaintiff's low back area which could cause significant instability in that region or which might cause plaintiff to experience pain.
*481 It appears, therefore, that Dr. Hamilton is the only medical expert who feels that plaintiff was disabled. The attending physician felt that he had fully recovered by February 22, 1959, and all other doctors who examined plaintiff, including two orthopedic surgeons and one radiologist, testified that plaintiff was not disabled when examinations were made six or seven months after he had been discharged by Dr. Gray. There is no reason to question the standing of any of these experts in their profession. If the testimony of any one of them is entitled to greater weight than that of any of the others, it appears to us that the opinion expressed by Dr. Gray who attended and treated plaintiff immediately following the injury is particularly significant. Dr. Gray, as has been stated, feels that plaintiff had fully recovered prior to the time compensation payments were discontinued. Insofar as the medical testimony is concerned, therefore, plaintiff has failed to establish by a preponderance of the evidence that he is disabled.
The trial judge, recognizing the fact that all of the medical experts did not agree, considered the lay testimony which was introduced relating to plaintiff's injury and his alleged disability. The testimony of the lay witnesses, however, does not convince us that plaintiff was disabled after being discharged by Dr. Gray. The trial judge apparently received the same impression from this testimony, as is shown by the following comments contained in his reasons for judgment:
"Plaintiff produced some lay witnesses to testify concerning their knowledge of Johnson's disability. Most of these witnesses testified that they did not see the plaintiff very often but when they did see him, he was not working. They also testified that plaintiff limped. The witness, Dorothy Jackson, testified that she runs a rooming house in DeRidder and that the plaintiff had been living at her place for approximately four months prior to the trial. According to her, the plaintiff stays around the house and continuously complains of pain in his back and legs. On cross examination she testified that the plaintiff owes her over $200.00. Plaintiff did not call his wife to testify. According to the evidence he has not lived with his wife for several months.
"Weighing all of these factors, it can not be gainsaid that the defendant has a good case. Practically the only thing that the plaintiff has in his favor are his complaints, his appearance, and Dr. Scott Hamilton's professional medical opinion to the effect that plaintiff is disabled. These factors are sufficient to enable him to recover."
The evidence further establishes that plaintiff has not sought or received any medical treatment since being discharged by Dr. Gray 32 days after the accident occurred. Within nine days after being released from the hospital plaintiff was involved in a fight in a cafe in Oakdale, and on February 2, 1959, he was convicted of disturbing the peace and was given a jail sentence. He served three days in jail, but was permitted to leave the jail each of those days in order to receive physiotherapy treatments from Dr. Gray. According to the evidence, plaintiff apparently did not receive any medical treatment during the eight or nine day period from the time he was released from the hospital, on January 24, until the day he was sentenced to jail on February 2, 1959. Within two weeks after the accident occurred, while plaintiff was being treated by Dr. Gray and was receiving compensation payments from defendant, plaintiff employed an attorney to assist him in his compensation claim. The last two compensation payments made by defendant, in fact, were paid to plaintiff through the attorney which he had employed. One or two weeks after being discharged by Dr. Gray plaintiff applied to his uncle, Reverend Oscar Hobson, for employment doing the same type of work which he had been performing prior to *482 the accident. His uncle refused to employ him because plaintiff had engaged an attorney to prosecute his claim for compensation, and Hobson "didn't want to interfere with it." In applying for this employment, however, plaintiff suggested to his uncle that he could go back into the woods and work and that "nobody would have to know about it." All of these facts, together with a preponderance of medical testimony to the effect that plaintiff is not disabled, convinces us that plaintiff has not suffered the disability which he alleges and claims.
The jurisprudence of this State has been established to the effect that in a compensation case, as in other cases, plaintiff bears the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence. Burk v. Gulf Refining Co. of Louisiana, La.App.1936, 171 So. 135; Dours v. Travelers Ins. Co., La.App.1950, 48 So.2d 817; Caldwell v. Caldwell, La.App.1950, 55 So.2d 258; Roberts v. M. S. Carroll Co., La.App.1953, 68 So.2d 689, 693.
In Roberts v. M. S. Carroll Co., supra, for example, the Court of Appeal, Second Circuit, said:
"Under the circumstances, and in view of the even balance as between the evidential support of the opposing contentions of plaintiff and defendants, we can only conclude that plaintiff failed to support his claim by the requisite preponderance of the evidence. The most that could be said in support of plaintiff's position is that he has succeeded in establishing a possibility of disability resulting from the accidental injury. The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment. These principles have been stated, restated, iterated, reiterated, emphasized and re-emphasized, in almost innumerable decisions, among which we mention only a few of the latest citations: * * *."
After reviewing all of the evidence in this case, we are convinced that plaintiff has failed to establish with reasonable certainty that he has been disabled at any time after compensation payments were discontinued, and that the trial judge erred in permitting him to recover.
For the reasons herein set out, therefore, the judgment of the trial court is reversed, and judgment is rendered in favor of defendant, rejecting plaintiff's demands at his costs, including the costs of this appeal.
Reversed.