HOOD, Judge.
This is a suit for workmen’s compensation benefits in which plaintiff alleges that he is totally and permanently disabled as the result of a leg injury sustained by him while employed by defendant. At the trial of the case, counsel for both parties stipulated that the only question presented was “whether or not this man was disabled as the result of an injury, and the length, extent and duration.” The trial judge rendered judgment in favor of defendant dismissing plaintiff’s suit, and plaintiff has appealed from that judgment.
The evidence establishes that on April 15, 1958, during the course of plaintiff’s employment as a common laborer by defendant, a log struck or rolled on plaintiff’s right leg causing the injury which forms the basis for this suit. Defendant at that time was doing construction work in connection with oil field and pipeline operations, and the accident occurred while plaintiff was sawing logs as a part of defendant’s work in clearing a right-of-way.
Plaintiff received medical treatment for this injury, including hospitalization, and he returned to work for defendant on May 5, 1958, about three weeks after the accident occurred. He worked for only two days on that occasion, however, and during those two days he worked as a “swamper,” which is lighter work than that which he performed prior to the day of the accident. He has not worked for defendant since May 6, 1958. Defendant has paid all of the medical and hospital bills incurred in the treatment of plaintiff’s injury, and it also has paid compensation to plaintiff at the rate of $35 per week from the date of the accident until May 7, 1958. No further payments of compensation have been made to plaintiff since this last mentioned date. Defendant contends that plaintiff had fully recovered from his injury by May 7, 1958, and that he has had no disability attributable to the accident since that date.
Dr. J. J. Stagg, a general practitioner and surgeon, examined plaintiff on April 17, 1958, two days after the accident occurred, and found that plaintiff at that time was suffering from a contusion of the right lower leg and thrombophlebitis of that leg. The thrombophlebitis was described as a blood clot in the saphenous vein on the right side. Dr. Stagg treated plaintiff from that date until May 2, 1958, the treatment including hospitalization because of the thrombophlebitis from April 21 to April 29, 1958. On May 2, 1958, Dr. Stagg advised plaintiff that he could return to work. Plaintiff did return to work for defendant on May 5, 1958, and as has already been pointed out, he worked as a “swamper” for two days. He returned to Dr. Stagg on May 12 complaining that his leg swelled while he worked. The doctor found no swelling, however, and after an examination made on that date, he concluded that plaintiff had fully recovered and he thereupon discharged plaintiff. Dr. Stagg testified that he did not think that it was possible that plaintiff’s right posterior tibial artery was injured or damaged in any way in the accident which occurred on April 15, 1958, and that there could be no causal connection between the accident and the arterio-losclerosis or calcification in the tibial artery found by other physicians more than a year later.
Dr. C. V. Hatchette and Dr. George B. Briel, orthopedic surgeons, examined plaintiff on April 21, 1959, approximately one year after the injury occurred. Dr. Hat-chette testified that the clinical and X-ray examinations made by him on that date were completely negative as to any injury, thrombophlebitis or disability relating to plaintiff’s right leg, and that in his opinion plaintiff could return to gainful employment of a physical nature. Although he found no evidence of disability and concluded that *814 plaintiff was not disabled, Dr. Hatchette further testified that it was possible that plaintiff had received an injury to the arterial or venous circulation of the right leg at the time of injury which resulted in a local thrombophlebitis, with .some residual effects, but that this was purely speculative and that it would be unusual for a clot to remain in a vein for a period of over a year without symptoms.
Dr. Briel did not testify, but a written report which he submitted to plaintiff’s attorney was received in evidence by stipulation of counsel. According to this report, Dr. Briel found no evidence of disability from the clinical examination which he made, but X-rays showed some calcification present in the posterior tibial artery. Without expressing any opinion as to whether such a condition is disabling or whether there could be a causal connection between the accident and the arteriolosclerosis which he found, Dr. Briel simply suggested that since plaintiff continued to complain of pain he should be examined by a general surgeon.
Dr. Benjamin M. Rush, a general surgeon and proctologist, examined plaintiff on September 23, 1959, about 17 months after the accident occurred. He concluded from that examination that plaintiff was suffering from a chronic peripheral vascular disease and that he then had a partial or complete occlusion of the right posterior tibial artery. He examined X-rays made by Dr. Stagg shortly after the accident occurred and other X-rays made of plaintiff’s leg in April, 1959. The latest X-rays, according to his testimony, showed some calcification of the right posterior tibial artery, while those made by Dr. Stagg did not show any such calcification. He conceded, however, that a different technique was used by Dr. Stagg and that the X-rays which he took could not be considered as establishing the absence of calcification at that time. Dr. Rush found no evidence of thrombophlebitis or any residual disability from that condition. He testified that in his opinion the occlusion of the right posterior tibial artery could have been caused or hastened by the accident of April, 1958, but that if there was such a connection between the accident and plaintiff’s existing condition he thought the occlusion would have occurred immediately after the accident, his testimony along that line being as follows:
“Q. Now, if the artery was not occluded immediately after the injury, then would you have any tieup between the injury and the occlusion you may find? A. I would think that if an artery were going to be occluded by injury, it would occur immediately, whether it were a normal artery or a diseased artery. I do not know that trauma can cause a slowly progressive vascular disease.”
The fact that Dr. Stagg, the treating physican, found no injury to the artery within three weeks after the accident occurred, considered with Dr. Rush’s testimony, indicates that no injury to plaintiff’s right posterior tibia! artery was sustained in that accident.
The evidence also shows that since the accident occurred, plaintiff has voluntarily consulted and was treated by four doctors other than those hereinabove mentioned. None of these doctors was called as witnesses, however, and their testimony is not available to us.
The medical testimony is convincing to the effect that plaintiff did not sustain an injury to the right posterior tibial artery in the accident which occurred on April 15, 1958, and that there is no causal connection between the accident and the calcification which was later found in that artery. The best that can be said for plaintiff insofar as the medical testimony is concerned, is that it is possible that there is a causal connection between the injury and his present condition, although the findings of all medical experts indicate that this is unlikely.
The lay testimony establishes that prior to the date of this accident plaintiff’s principal occupation was farming, but that for about five years immediately prior to that *815 time he had worked “off and on” for defendant. As has been stated, plaintiff returned to work for defendant on May 5 and 6, after being released by Dr. Stagg. He testified, however, that “work was kind of slack” and “they didn’t need no mans,” so he voluntarily quit working for defendant and went to work for L. F. Robertson Construction Company, which company was engaged in oil field construction work. Plaintiff was employed by Robertson from August through December, 1958, to assist in lifting pipes on a pipeline crew and to do other heavy manual labor. The records of the Robertson company show that during that period plaintiff worked a total of 43 days, aggregating 357.5 hours, or an average-of 8.3 hours per day. On some days he worked 10 or 11 hours. During all of that time he made no complaints of pain or disability to his employer or to any of his fellow workers, and the evidence indicates that he performed his duties satisfactorily.
Plaintiff quit working for the Robertson company in December, 1958, and since that time he has been engaged in farming, which is the same type of occupation he pursued prior to the accident. He states, however, that because of the injury to his leg he does not do a full day’s work but merely supervises his children in doing the farm work. His wife and two other witnesses confirmed the fact that he does not work a full day in connection with his farming activities.
The record also establishes that plaintiff collected unemployment compensation for approximately one year, beginning during the summer of 1958 and ending in the summer or fall months of 1959. He admitted that it was necessary for him to swear that he was able to work in order to collect this unemployment compensation, but he testified that “he would have tried to work” and “he was trying to work.”
The jurisprudence of this State has been established to the effect that in a compensation case, as in other cases, plaintiff bears the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence. Burk v. Gulf Refining Co. of Louisiana, La.App. 2 Cir., 171 So. 135; Dours v. Travelers Ins. Co., La.App. 1 Cir., 48 So.2d 817; Caldwell v. Caldwell, La.App. 2 Cir., 55 So.2d 258; Roberts v. M. S. Carroll Co., La.App. 2 Cir., 68 So.2d 689, 693; Fontenot v. Camden Fire Insurance Ass’n, La.App. 3 Cir., 124 So.2d 640; Johnson v. Cloud, La.App. 3 Cir., 125 So.2d 478.
Plaintiff also is required to establish that his existing disability, if any, resulted from an accidental injury which he sustained during the course and scope of his employment, and if he fails to prove the requisite causal connection between the accident and the disability his suit must be dismissed. Dours v. Travelers Ins. Co., supra; Hammett v. Cities Service Refining Corporation, La.App. 1 Cir., 50 So.2d 331; Woods v. Brezner, La.App. 2 Cir., 62 So.2d 131; Fontenot v. Travelers Insurance Company, La.App. 1 Cir., 112 So.2d 175; Fontenot v. Camden Fire Insurance Assn., supra; Martin v. Fidelity & Casualty Co. of New York, La.App. 2 Cir., 124 So.2d 782; Prejean v. Bituminous Casualty Corp., La.App. 3 Cir., 125 So.2d 221.
The medical evidence in this case establishes that plaintiff sustained a contusion of the right lower leg and thrombophlebitis or blood clot in the saphenous vein on the right side, that he fully recovered from that injury, and that there is no causal connection between the accident and the arterio-losclerotic condition or occlusion which was discovered later. The lay testimony establishes that he performed heavy manual labor for several months after being discharged by Dr. Stagg, and this supports the medical testimony to the effect that he had fully recovered from the injury which precipitated this suit.
We conclude, therefore, as did the trial judge, that when compensation payments were discontinued on May 7, 1958, plaintiff had fully recovered from the injury which he sustained during the course of his em *816 ployment by defendant. We also are convinced that the trial court was correct in holding that plaintiff has failed to establish a causal connection between the accident which occurred on April 15, 1958, and the calcification of the right posterior tibial artery or the occlusion of that artery found to be present more than one year later.
For the reasons herein set out, therefore, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff.
Affirmed.
On Application for Rehearing.
Rehearing denied, en Banc.