LANDRY, Judge.
This is a suit for workmen’s compensation benefits wherein the injured employee, Eddie W. Bates, plaintiff herein, prays for judgment decreeing his total and permanent disability as a pipefitter by virtue of an accident which admittedly occurred November 30, 1961, during the course of his employment by Ross Construction Company, causing injury to plaintiff’s left hand. The trial court rejected plaintiff’s demand for compensation for total permanent disability but found that plaintiff sustained 15% disability of the left hand as a result of the accident. The trial court also found plaintiff’s weekly wages to be $152.00 and, predicated on such findings, awarded plaintiff compensation in the sum of $14.82 weekly for 150 weeks subject to credit for compensation paid, said amount awarded being 15% of 65% of plaintiff’s weekly wage. From the judgment rendered below plaintiff has appealed assigning as error the *71 trial court’s refusal to award him compensation for total permanent disability. Defendant, American Insurance Company, compensation insurer of plaintiff’s employer, Ross Construction Company, has not answered the appeal. In defendant’s brief filed before this court, however, counsel for defendant insurer takes the position the judgment of the trial court is correct and should be affirmed.
From the foregoing it is readily apparent the sole issue before the court on this appeal is the extent of appellant’s injury and the correctness of the trial court’s judgment in rejecting appellant’s claim for total permanent disability and awarding instead compensation for the partial loss of use of a specific member.
Plaintiff, who is right-handed, maintains he is totally and permanently disabled by reason of loss of grip in his left hand to such extent he is restricted and impeded in the use of heavy tools with which a substantial portion of his duties are performed. He further contends his loss of grip materially impairs his ability to climb. In addition, he argues the use of heavy tools and climbing constitute substantial portions of his duties and his inability to perform such important aspects of his trade renders him eligible for compensation for total permanent disability. It is further argued on plaintiff’s behalf that residual disability sustained by him makes it impossible for plaintiff to work without appreciable pain. The gravamen of plaintiff’s complaint, however, as we understand it from the brief of counsel, is the contention the trial court erred in not finding plaintiff totally and permanently disabled because the loss of grip shown renders plaintiff incapable of performing a substantial portion of his duties. In support of the position assumed, learned counsel for appellant cites and relies mainly upon Porter v. New Amsterdam Casualty Company, La.App., 99 So.2d 478; Michel v. Maryland Casualty Co., La.App., 81 So.2d 36; and Strother v. Standard Accident Ins. Co., La.App., 63 So.2d 484.
The evidence reveals plaintiff sustained a crushing injury to his left hand on November 30, 1961, when a 17 foot length of three inch pipe fell and struck his hand. Plaintiff was taken to Baton Rouge General Hospital where he was seen by Dr. Thomas T. Fenton, a General Practitioner. Dr. Fenton found the injured hand to be badly contused on both the palm and back and also noted a splitting of tissues on both the palmer and dorsal surfaces. X-ray examination revealed a comminuted fracture of the second metacarpal of the hand at the point where the metacarpal forms the joint with the left first or index finger. Dr. Fenton explained that whereas in lay terminology the fracture would be considered as a fracture of the left index finger, in reality the break involved the bone which forms the palm of the hand and the joint of the index finger or, in other words, the distal end of the second metacarpal. He further noted the fracture extended into the joint mentioned. Plaintiff’s injured hand was splintered by Dr. Fenton and plaintiff administered sedation.
In substance, Dr. Fenton testified plaintiff remained under his care and treatment from the date of the accident until June 5, 1962, during which interval plaintiff visited his office on several occasions. Dr. Fenton also made a cursory examination of plaintiff’s hand on the date of the trial, namely, December 14, 1962. In the opinion of Dr. Fenton, plaintiff has sustained a 50% loss of flexion of the left index finger whereas the rather minor injury to the remaining fingers of the left hand was found to have healed completely with no residual disability. Predicated upon the finding of 50% loss of flexion of the left index finger, Dr. Fenton is of the opinion plaintiff has suffered a significant loss of grip in the left hand. He frankly conceded, however, his evaluation of plaintiff’s flexion loss is purely a rough estimate since he acknowledged he did not possess instruments by means of which such loss is measured and computed by specialists. He further stated his admittedly perfunctory examination of plain *72 tiff’s hand made on the date of trial disclosed no change in the condition previously noted. Dr. Fenton was also of the opinion the residual disability found would affect plaintiff’s ability to exert a pulling force in the handling of large tools considering pulling involved the use of the fingers but admitted it would have little effect on- plaintiff’s ability insofar as pushing movements were concerned because pushing could be accomplished with the palm of the hand without appreciable finger involvement. In the opinion of Dr. Fenton, plaintiff’s loss of grip and inability to work without pain, which latter diagnosis was based almost exclusively upon plaintiff’s subjective complaints, totally disabled plaintiff from performing a substantial portion of the duties of a pipefitter as Dr. Fenton understood them.
Plaintiff was also seen on several occasions by Dr. Charles B. Cracraft, Orthopedist, upon referral by Dr. Fenton. On the occasion of Dr. Cracraft’s first examination which occurred January 20, 1962, plaintiff was rioted to be suffering the effects of a crushing injury to the left hand. Dr. Cracraft observed a healed laceration scar on the back or dorsal surface of the hand attended by some swelling and also a healed puncture type scar in the middle of the palmer crease. Motion of the proximal and distal IP joints of the third, fourth and fifth left fingers were found complete and painless. Some restriction of motion was observed in the MP joints of the third, fourth and fifth fingers in that they could then be brought to within only approximately one-half inch of the palm. Dr. Cracraft observed slight impairment of motion of the proximal and distal IP joints of the index finger but found motion of the MP joint of the index finger to be markedly restricted and painful. Plaintiff’s thumb was found to be unaffected. At this time Dr. Cracraft made no attempt to evaluate the degree or extent of plaintiff’s disability as he felt plaintiff had not yet attained maximum improvement. By way of therapy, Dr. Cracraft recommended hot paraffin baths.
On March 2, 1962, Dr. Cracraft again saw plaintiff and found plaintiff had regained full flexion of the third, fourth and fifth fingers of the left hand. He noted, however, continued marked restriction of motion of the MP joint of the index finger’ but was of the opinion the condition of the index finger would improve further. Plaintiff visited Dr. Cracraft in May, June and July, 1962, and finally on November 28, 1962, on which latter date Dr. Cracraft considered plaintiff’s hand achieved maximum improvement. Dr. Cracraft’s last examination revealed plaintiff has 25'% flexion of the left index finger whereas full flexion is rated at 85%. Based on such finding, Dr. Cracraft concluded plaintiff suffered a 56% disability of the left index finger which condition he felt would be permanent. While he believed the condition indicated would to a very limited degree affect plaintiff’s grip and declined to express the percentage of such impairment, he nevertheless was of the opinion plaintiff does not suffer from a permanent disability of the left hand. Dr. Cracraft was of the further opinion the injury to the third, fourth and fifth fingers was completely healed with no residual disability whatsoever. He felt that the injury to these three fingers should not be the source of any future pain whatsoever. He conceded the possibility plaintiff might experience some pain as a. result of the loss of flexion found in the left index finger but stated such pain should not he appreciable and ordinarily would be nothing more than a dull ache. Dr. Cracraft also explained that for a period of three years he worked for an industry employing pipefitters and during this time frequently observed pipe-fitters at work. Predicated on his personal knowledge of the nature of a pipefitter’s duties, he believed plaintiff capable of performing every aspect of the trade, including climbing and the use of large heavy wrenches and tools without either appreci *73 able pain or danger to plaintiff or plaintiff’s fellow employees.
In essence plaintiff testified he resumed his employment approximately five weeks following his injury while his hand was yet in a splint. He stated he was in effect “carried” by his fellow employees who voluntarily performed his share of the heavy work. Plaintiff frankly acknowledges he worked more or less steadily upon resuming his trade. He admits he was never discharged from or refused employment because of the condition of his hand following the accident. Plaintiff maintained his left index finger is extremely painful, the pain extending sometimes along his entire left arm. He also stated he has lost considerable grip in his left hand with the result his left hand and arm tire easily. According to plaintiff, climbing and the use of heavy tools, especially wrenches and pipe cutting dyes, constitute a substantial portion of a pipefitter’s work. He testified the loss of grip makes climbing especially hazardous not only to himself but also his fellow employees and has- made it impossible for him to properly handle large tools which he must constantly use.
As contended by esteemed counsel for appellant, the jurisprudence of this state is settled to the effect that injury to a specific bodily member may be the basis of an award of compensation for total permanent disability where the injury disables the employee from performing a substantial portion of his duties. Anderson v. Continental Can Company, La.App., 141 So.2d 48; Porter v. New Amsterdam Casualty Company, La.App., 99 So.2d 478; Michel v. Maryland Casualty Co., La.App., 81 So.2d 36; Strother v. Standard Accident Ins. Co., La.App., 63 So.2d 484.
We believe no citation of authority necessary in support of the proposition that the issue of whether injury to a specific bodily member disables an employee to perform a substantial portion of his duties thereby entitling him to workmen’s compensation benefits as for total permanent disability, is purely a question of fact to be resolved in the light of the circumstances attending each individual case.
The foregoing principle, however, gives rise to the applicability of the rule that in an action for recovery of workmen’s compensation benefits, as in all civil causes, plaintiff must bear the burden of establishing his case by a fair preponderance of evidence. Ferman v. Bishop-Edell Machine Works, Inc., La.App., 144 So.2d 614; Pellican v. Ashy Construction Company, La.App., 127 So.2d 812; Johnson v. Cloud, La.App., 125 So.2d 478.
While the rule announced in the Porter, Michel and Strother cases, supra, cited and relied upon by plaintiff-appellant is unquestionably applicable to the case at bar, our analysis of the aforesaid authorities reveals each said cited authority involved factual circumstances different from those obtaining in the case at bar.
In Porter v. New Amsterdam Casualty Company, La.App., 99 So.2d 478, plaintiff was awarded compensation for total permanent disability when it was found the accident aggravated a congenital back injury which incapacitated plaintiff from doing heavy manual labor without severe pain.
In Michel v. Maryland Casualty Company, La.App., 81 So.2d 36, this court also awarded compensation benefits as for total permanent disability on the finding that plaintiff, a dragline operator, sustained a disabling back injury.
Strother v. Standard Accident Ins. Co., La.App., 63 So.2d 484, is also distinguishable from the instant case considering a steamfitter, whose duties consisted of “swamping on the caterpillar with a side boom attachment”, was therein found by one physician to be 25% permanently disabled as a result of compression fractures involving two dorsal vertebrae while another medical authority was of the opinion *74 he would be able to resume his employment possibly within a year and a third medical expert deemed plaintiff capable of discharging his duties despite a 20% permanent disability. Based on such testimony we believe the court properly concluded plaintiff therein was totally and permanently disabled.
In the case at bar, however, we believe plaintiff has failed to establish by a fair preponderance of evidence, as required by well established jurisprudence, that the relatively minor residual disability to his left index finger has incapacitated him from discharging a substantial portion of his duties as pipefitter.
While we are in complete agreement with the principle that the testimony of a treating physician, though a general practitioner, is accorded greater weight than that of a specialist who examines an injured employee for evaluation of injury only, we believe the rule to be inapplicable to the instant case in view of the attending circumstances. It is of utmost significance that Dr. Cracraft, Orthopedist, saw and examined plaintiff upon referral by Dr. Fenton who felt the nature and extent of plaintiff’s injuries warranted engagement of a specialist to assist in plaintiff’s care and therapy and be available for consultation and advice regarding plaintiff’s progress and prognosis. The record reveals Dr. Cracraft did in fact recommend therapy in the form of hot paraffin baths which could be administered only by trained hospital employees. Moreover, Dr. Cracraft saw and examined plaintiff on several occasions to determine the extent of plaintiff’s improvement, the last two such examinations occurring in July and November, 1962, subsequent to Dr. Fenton’s last examination in early July, 1962. It is clear from the record plaintiff was under the joint treatment of both Dr. Fenton and Dr. Cracraft. Under the circumstances we conclude the testimony of Dr. Cracraft regarding the degree and extent of plaintiff’s residual disability is entitled to the greater weight.
The weight of the medical testimony herein is to the effect plaintiff has sustained no residual disability. More specifically Dr. Cracraft was of the opinion plaintiff 'should be able to work without appreciable pain or serious impairment of his ability to climb. Plaintiff’s own testimony to the contrary is weakened considerably by his frank admission he has worked since the accident whenever work was available and by his further concession he was never refused, or discharged from employment as a pipefitter because of his inability to perform such work following the accident.
Considering the record as a whole we conclude, as did our learned brother below, plaintiff has failed to establish his alleged total permanent disability by a fair preponderance of evidence.
Accordingly, the judgment of the trial court is affirmed, costs of this appeal to be paid by appellant, Eddie W. Bates.
Affirmed.